Marvin R. Dye, J.
The issue we now deal with appears to be one of first impression; at least no case is called to the court’s attention by either counsel, nor has its own research discovered any, which holds that when lands severed, as in eminent domain proceedings, may not be put to a practical use under existing zoning ordinances, the owner is entitled to a variance on the ground of unnecessary hardship or, in the alternative, a judgment declaring the ordinance constitutionally invalid as to such severed lands.
The controversy is here by different routes: First, by a proceeding instituted under article 78 of the CPLR in the nature of certiorari to review a determination of the Zoning Board of Appeals of the Town of Chili (hereinafter “Board”), which upheld, after a hearing, a denial by the Building Inspector of the Town of Chili, of petitioner’s application for a permit to construct on the lands in question a multiple-family type of garden court apartment, a nonpermitted use; and secondly, by an action for a judgment declaring the Town Zoning ordinance constitutionally invalid as applied to the lands in question. By stipulation of counsel, the article 78 proceeding is being submitted on the record before the Board in order that it may be considered for decision in conjunction with the action for the declaratory judgment.
The action was tried without a jury. The evidence establishes without dispute that in April, 1954 the plaintiff, a domestic corporation, purchased a 31-acre tract of land situate in the Town of Chili on the easterly side of West Side Drive, all within a Residential “ E ” District, as defined in article I, title 19 of the Town Zoning Ordinance, the pertinent part of which authorizes by reference any use permitted in an “ EE ” District (par. 19-10) which in substance limits the use in such “E” District to a single-family dwelling, farm, accessory farm buildings, nursery, public park and private garage, and, subject to special provisions, permits a professional office as part of a dwelling actually used by a member of a profession, a school or college, public library, fire station, town garage, church, convent, greenhouse or park buildings (par. 19-7). The ordinance also makes detailed provisions for height of structure (par. 19-11), limits area of lot to be occupied at 25%, the number of stories and floor area of a structure (par. 19-12), yard area by fixing front, rear and side line setbacks for any structure (par. 19-13) and a minimum lot size (par. 19-9c).
*868 The ordinance was duly adopted, following a public hearing, by the Board of Chili September 16, 1947 and made effective November 1,1947. Subsequent amendments adopted in 1961 are not here pertinent. No challenge is made to the legislative authority of the town or to the sufficiency and propriety of the procedure followed in adopting the ordinance.
Following the aforesaid purchase, the plaintiff, in compliance with the pertinent section of the ordinance and regulations, made application for development of the tract as a residential subdivision, which was duly approved by the town authorities. Following such approval, all of the lots fronting on the easterly side of West Side Drive, except for two street openings, were sold in about 1955 and 1956 to individual purchasers and were improved with single-family houses which are being occupied as such.
Five years later and on or about June 10, 1960, the State of New York appropriated a strip of land approximately 100 feet in width and containing about 9.3 acres, for purposes of Interstate Highway No. 390, a limited access highway designated as “ Western Expressway ”, which traversed in a diagonal direction the original 31-acre tract and so divided it as to separate a triangular shaped parcel containing 4.02 acres lying on the northwesterly side thereof between the rear lot lines of the lots facing West Side Drive above mentioned and the westerly line of the Expressway from the remainder of the tract. The parcel thus severed has access to West Side Drive by means of a street 60 feet in width, as laid out on the original subdivision map, but not yet opened. The part of the tract lying on the southeasterly side of the expressway containing 17 acres does not now concern us beyond the mention that it has been combined with an adjacent parcel and sold for residential purposes in conformity with the zoning requirements.
At the trial engineering testimony was adduced showing that under the existing zoning ordinance regulations as to use, lot size, building and yard setbacks, the triangular shaped 4.02 acres could be subdivided at most into seven lots, all of irregular shape and size; that the cost of laying out such lots, grading and surfacing of a street and installing curbs, sidewalks, storm and sanitary sewers, utilities and sales promotion would exceed $6,000 per lot, which would be economically prohibitive, since the type and character of the houses already built in the neighborhood fall within the $18,000 to $22,000 price range, whereas a $40,000 to $45,000 price range would be required to justify use of the re-subdivision of the 4.02-acre parcel.
*869 There was also testimony that the subject parcel could not be advantageously used for any of the purposes permitted under the special provisions, due to its location, size, topography, odd shape, quality of soil and environs. According to the engineering and realtor witnesses, the only feasible and practical use of the severed plot would be as a site for a garden court apartment, plans for which were produced and received in evidence. Briefly, such plans provided for 15 two-story brick and frame buildings, each consisting of four-family units, 45 with one bedroom and 15 with two bedrooms. Twelve of the buildings would be connected in a series of three, and the remaining three buildings would be separate, all buildings having adjacent carports, driveways and landscaping.
Against this evidentiary background, the plaintiff owner contends that the separation resulting from the interstate highway .appropriation has so emasculated the subdivision as to completely frustrate use of the severed portion in conformity with the applicable zoning ordinance, and as such, amounts to legal (confiscation rendering the ordinance as to the lands in question (constitutionally invalid.
At the hearing on the application for a variance before the ."Board, substantially the same evidence was adduced on behalf 'Of petitioner. Town officials and property owners in the vicinity .also testified that the building of the proposed apartment complex would have a detrimental effect on the neighboring property ¡by increasing the population density to an unwarranted level -with its concomitant impact on traffic, schools, sanitation and the ■like. The Board resolved the evidentiary conflict on the ground That there was no evidence establishing unnecessary hardship, .although it did recognize that certain practical difficulties .attended the redevelopment of the subject property, that the (construction of a 60-unit apartment complex would change the (character of the neighborhood and would be detrimental to property values in the surrounding area and that the increased (density of population and its attendant demands would constitute .•a traffic, parking, health and safety problem detrimental to both The immediate vicinity as well as the Town of Chili as a whole ,- •that in any event, it was without authority to grant the application, since the construction of apartment dwellings in a residential district is nowhere permitted in the Town of Chili and to .-allow it would require legislative action not within the jurisdiction of the Board.
As the statute tells us, where there are practical difficulties ur unnecessary hardship in the way of carrying out the strict ■letter of the zoning ordinance, the Board “ shall have the power *870 * * * to vary or modify the application of any of the regulations or provisions of such ordinance ”. (Town Law, § 267, subd. 5). The exercise of such power is permissive and not mandatory. Before such discretion may be exercised favorably in behalf of the petitioner on the ground of practical difficulties and unnecessary hardship, he has the burden of proof to establish that the land in question cannot yield a reasonable return if used only for the purpose allowed in that zone; that the plight of the owner is due to unique circumstances and not to general conditions in the neighborhood which may reflect the unreasonableness of the zoning ordinance itself, and that the use to be authorized by the variance would not alter the essential character of the locality (Matter of Otto v. Steinhilber, 282 N. Y. 71, 76; Matter of Clark v. Board of Zoning Appeals of Town of Hempstead, 301 N. Y. 86; Matter of Hickox v. Griffin, 298 N. Y. 365; Matter of Young Women’s Hebrew Assn. v. Board of Stds. & Appeals, 266 N. Y. 270).
In light of the applicable statutes and decisional authority, it cannot reasonably be said that the denial of the application for a variance by the Board was so unreasonable, arbitrary and capricious as to amount to an abuse of discretion as matter of law. A court may not interfere with discretionary determination whenever the record discloses a reasonable basis for its exercise, and here there is such basis.
Since the submission of the article 78 proceeding is being disposed of herewith, the action for a judgment declaring the Zoning Ordinance of the Town of Chili, as it affects the plaintiff’s property, constitutionally invalid and for injunctive relief, is properly here (CPLR 3011; Matter of Diocese of Rochester v. Planning Board of Town of Brighton, 1 N Y 2d 508; Dowsey v. Village of Kensington, 257 N. Y. 221).
Such a judgment, however, may not be granted under the circumstances of this case. This is a quite different situation than ordinarily warrants the striking of a zoning ordinance such as was dealt with in Vernon Park Realty Inc. v. City of Mount Vernon (307 N. Y. 493), where an amendment to the zoning ordinance creating a new district known as Design Parking District forming an island in a highly developed Business “ B ” District and limiting its use to the parking of automobiles and thus precluding issuance of a permit for a retail shopping center was stricken as arbitrary and unreasonable, as it amounted to the taking of property without just compensation, contrary to due process. Likewise, Voelcleer v. City of Glen Cove (27 Misc 2d 1045 [Spec. Term, Nassau County]) is distinguishable. That too involved a subsequent legislative revision of an existing *871 zoning ordinance so classifying plaintiff’s property that single-family residences sufficiently large to return development costs would be unsalable. Here the practical difficulties, unnecessary hardship and loss, allegedly suffered by the plaintiff, are not due to any act of the town legislature or of the owner, but to State action in appropriating certain of the plaintiff’s property for highway use.
As we know, the dominant design of any zoning ordinance is to promote the general welfare (Town Law, art. 16, §§ 261, 263), subject always to the constitutional limitation that it must not be employed arbitrarily or unreasonably (Nashville, Chattanooga & St. Louis Ry. Co. v. Walters, 294 U. S. 405; Matter of Brous v. Smith, 304 N. Y. 164) and even if valid when adopted will nevertheless be stricken if at a later time its operations under changed conditions prove confiscatory (Abie State Bank v. Bryan, 282 U. S. 765), such, for instance, when the greater part of the value is destroyed (Dowsey v. Village of Kensington, 257 N. Y. 221). While there is no quarrel with these oft-expressed generalities, it nonetheless remains that in all cases attacking the validity of an ordinance, there must be a careful balancing of the essential interests between the individual in the enjoyment of his property rights and the general welfare. The plaintiff’s alleged disadvantage and loss incident to a changed condition may not be isolated from the whole of the surrounding facts and circumstances.
Here, as a fact, there has been no real and personal pecuniary loss occasioned either the property or its owner. The proof shows that, after applying a well-used rule of thumb, the plaintiff recouped the original purchase price of the tract when it sold the lots fronting on West Side Drive; that the State paid $40,000 for the 9 acres taken for highway use; that topsoil was sold for $8,900, and that the 17-acre parcel lying southeast of the expressway was combined with other land and sold for $35,000 to $40,000, thus indicating a gross profit of some $84,000 on the undertaking over and above the original investment. Both State and Federal Constitutions protect a citizen in his property rights by providing that private property shall not be taken for public use without “just compensation” (N. Y. Const., art. I, § 7, subd. [a]; U. S. Const., 5th and 14th Arndts.), which has long been interpreted as including consequential damage to the remainder. The severance of the 4.02 acres now being considered was not without just compensation.
The court cannot accept the idea that severance damage was overlooked in this instance by these experienced entrepreneurs *872 or by the State in computing the damages awarded. The fact that a lump-sum amount was paid without indicating what if anything was allowed for severance damage, does not under the circumstances mean that it was not considered and included; in fact, everything points to the circumstance that it was, since the amount paid for the nine acres was at a rate per acre of about 10 times the original acreage cost and was nearly 4 times that paid for the 31-acre tract but a short time before. Payment of such a price can only be justified as including severance damage to the remainder and certainly well within the range of just compensation envisioned by framers of the Constitution, and which depended in no small part on the recognition and expectation that the appropriation proceeding did not operate to alter and negate the zoning policy of the local government, but was intended to harmonize and offset any loss or disadvantage suffered by the owner by reason of such zoning policy.
Finally, it seems clear that the plaintiff’s proposed use of the property for a 60-family multiple dwelling complex is incompatible with the over-all plan and policy for development of the town and would create conditions distinctly different from those existing in the locality by adding problems incident to an increase in population density as well as unquestionably altering the essential character of an otherwise residential neighborhood developed in reliance on the stability of the ordinance (Matter of Taxpayers’ Assn. v. Board of Zoning Appeals, 301 N. Y. 215). The granting of a permit to construct a garden court apartment in an area similarly zoned is not a controlling circumstance, as the plaintiff would have us believe. The test is whether the plaintiff has been deprived of his property contrary to constitutional requirements (Matter of Larlcin Co. v. Schwab [City of Buffalo], 242 N. Y. 330) and not whether someone else has been favored and thus magnify the error.
It has long been the rule that the financial situation or pecuniary hardship of a single owner affords no adequate ground for the setting aside of a zoning ordinance (Young Women’s Hebrew Assn. w.Board of Stds. & Appeals, 266 N. Y. 270;Prusick v. Board of Appeals, 262 Mass. 451). Unnecessary hardship in the legal sense means unreasonable financial loss. Here there has been none. By any reasonable interpretation of the surrounding facts and circumstances, the plaintiff’s attack on the within ordinance is not justified (Shepard v. Village of Skaneateles, 300 N. Y. 115).
Accordingly, it cannot reasonably be said as matter of law that the zoning as it affects this property is so oppressive .in .its .operation as to be constitutionally invalid.
*873 The complaint praying for a declaratory judgment and for injunctive relief should be dismissed.
Let order be entered in the article 78 proceeding dismissing the petition and in the declaratory judgment action dismissing the complaint, Avith one bill of costs.