James H. Boomer, J.
The petitioner applied to the Town Board of the Town of Penfield for a permit, under the commercial excavations, ordinance of the town, to excavate and remove soil from two areas of his land. The Town Board granted his permit as to part of his land but denied it as to the other. The petitioner brings this article 78 proceeding to review this determination of the Town Board.
The validity of the town ordinance has not been questioned. Indeed, that issue may not be raised in an article 78 proceeding (Vernon Park Realty v. City of Mount Vernon, 307 N. Y. 493, 501; Matter of Diocese of Rochester v. Planning Bd. of Town of Brighton, 1 N Y 2d 508, 520). The only issues raised are whether the determination of the Town Board in denying the permit was unreasonable and arbitrary and without a rational basis and whether it operated in a confiscatory and, therefore, unconstitutional manner (Matter of Diocese of Rochester v. Planning Bd. of Town of Brighton, supra).
As stated by the Court of Appeals, ‘ ‘ special exceptions grants or denials, even though by a legislative body, [are] for court purposes administrative with the result that they are subject to review ‘ as to reasonableness ’ in an article 78 proceeding. But it did not mean that the bringing of such a proceeding transfers original jurisdiction of such a matter to the courts. The courts do not sit to supervise the discretionary acts of the hundreds of town boards and zoning boards in this State.” (Matter of Lemir Realty Corp. v. Larkin, 11 N Y 2d 20, 24.) “ The judicial function is exhausted when there is found to be a rational basis for the conclusions approved by the administra *700 tive body.” (Matter of Leathersich v. Wade, 20 A D 2d 963, 964, quoting from Rochester Tel. Corp. v. United States, 307 U. S. 125, 146, and Matter of Mounting & Finishing Co. v. McGoldrick, 294 N. Y. 104, 108.)
Was the action of the Town Board unreasonable, arbitrary and without rational basis ?
The excavation permit was denied for the easterly portion of petitioner’s premises known as the “ Island Hill ”. The Island Hill consists of a long narrow hill with steep slopes, bounded on each of its long sides by a stream. The soil upon the hill is described as ‘1 Arkport — very fine sandy loam”. Trees and vegetation cover the slopes as well as the top of the hill. The Island Hill is located in a residential zoning district.
The commercial excavation ordinance, under which the petitioner has applied, authorizes the Town Board to approve or deny a permit in accordance with general standards and considerations which include, among others: ‘ ‘ Whether the commercial excavation operation and proposed restoration plan are in accord with the intent of the town comprehensive plan ” and ‘ ‘ Whether they will cause soil erosion or the depletion of vegetation.”
The comprehensive or master plan prepared for the town, in referring to the steep slopes in this area, states: 1‘ Particular attention should be given to insuring that the terrain features which can serve as a buffer between the industrial areas and adjacent residential areas be preserved.” (p. 25). Incorporated in the master plan is the study called Planning Inventory. This study states, “ Steep slopes are a permanent feature of the Penfield landscape along the entire length of the town’s western edge. These slopes form the sides of the valley of Irondequoit Creek and Irondequoit Bay. The soils in this area are predominately composed of fine sands deposited by the melt-water from the retreating glaciers of the ice age. These soils are extremely susceptible to erosion * * * . Such slopes are quite stable as long as they are left in their natural condition. Over the centuries vegetation has obtained a foothold on the slopes, and the roots of trees and smaller plants have greatly retarded the extension of the gullies. Any disturbance of the natural equilibrium, however, increases the risk of allowing erosion to resume. Experience has shown that the risk of the cycle is very hard to stop by artificial means.
‘ ‘ It should be clear from .the above discussion that great care should be used in any development of land within or adjacent to the areas of steep slopes. Ideally, these areas should be left *701 in their natural condition. Any development that does take place here should recognize the valuable function of the existing vegetation as a stablizing factor and should disturb it as little as possible.” (pp. 3-4).
The Geology and Soil Report, Avhich is part of the master plan, states that the Arkport soils are “ very erosive ” (p. 21). “ When exposed these soils are very erosive, even on the gentle slopes.” (p. 31). And the maps in this report show that the soils on the Island Hill are severely erosive (opposite p. 36) and have severe limitations for installation of utilities (opposite p. 42), have severe surface runoff potential (opposite p. 44), have severe limitations for suitability for disposal of septic tank effluent (opposite p. 48), and severe limitation for homesite development (opposite p. 52), and severe limitation for construction of roads (p. 60).
The master plan recognizes the danger of development in areas such as this because of the soil characteristics and steep slopes. And in places this Island Hill is in a conservation area. The plan acknowledges that ‘ ‘ most of the steeply sloping terrain, however, will undoubtedly remain in private hands. ToAvn regulations governing the use of lands in these areas should insure that protective measucés against erosion are taken whenever any development occurs. Particular care should be taken to avoid disturbance of the natural vegetation. One of the most effective measures would be to prevent any intensive development by zoning for a minimum lot size of two acres of thereabouts in such area.” (p. 28).
The resolution of the ToAvn Board in granting the permit for a part of the petitioner’s land and denying it for the ‘1 Island Hill”, adopted the recommendation of the Planning Board stating:
‘ ‘ 2. Any excavation of the ‘ Island Hill ’ is viewed as a damaging activity in an environmentally sensitive area.
“ 3. The Penfield Master Plan and the Irondequoit Bay Plan identify the area as a unique natural resource to be maintained as much as possible in a natural condition; therefore, the application as it pertains to the ‘ Island Hill ’ is contrary to public policy.
“4. As stated in a Penfield Planning Board resolution, dated July 7, 1970, certain undesirable consequences follow from cutting hills in this vicinity; these are:
“ (a.) Removal of vegetation and natural cover.
“ (b.) Serious soil erosion.
“ (c.) Destruction of natural beauty.
*702 “ (d.) Creation of loose soil, blowing dust and sand.
“ (e.) Unintended filling of natural stream channels.
“5. As stated in a Town Board Resolution, dated August 3, 1970, ‘ # * a disturbance of this hill will result in the ruination of an ecological niche that has an effect on Irondequoit Bay and the Bay Area. ’ ”
The plan submitted by the petitioner shows that all of the cover and vegetation is proposed to be removed over a substantial portion of the top of the hill creating a depression in the center for a roadway. Petitioner contends that his plan will prepare the land for future use as a residential subdivision.
I cannot say that the board’s action is arbitrary or unreasonable insofar as it prevents the commercial use of this residentially zoned area for the purpose of removing and selling the soil. Whether the determination of the board is unreasonable and arbitrary because it is confiscatory in that it prevents him from any practical use of his land, is another matter. To use this portion of the land for residential purposes, the only use permitted under the zoning ordinance, it is necessary that there be some excavation and soil removal.
But in deciding whether the board has acted unconstitutionally and confiscatorally in denying the petitioner the use of his property, I must consider all of petitioner’s property and not the Island Hill alone. See Sibley Props. v. Eckert, (Sup. Ct., Monroe County. Oct. 6, 1972, affd. without opn. 43 A D 2d 909): “ Nevertheless, if it be determined that the zoning ordinance precludes the use of the plaintiffs’ property for any purpose for which it is reasonably adapted, the ordinance is confiscatory and unconstitutional. In considering this question, I may not confine my inquiry to the 15 lots in question, but must take a ‘ total view of the relevant facts and circumstances ’ (Stevens v. Town of Huntington, supra, p. 356) including the history of the entire * * * parcel originally purchased by (petitioner). 1 The plaintiff’s alleged disadvantage and loss * * * may not be isolated from the whole of the surrounding facts and circumstances. ’ (Matter of Style Rite Homes v. Zoning Bd. of Apps. of Town of Chili, 54 Misc 2d 866, 871.) ” (See, also, Koff v. Incorporated Vil. of Flower Hill, 29 A D 2d 655, affd. 28 N Y 2d 694.)
Here, the petitioner has not shown that the ordinance, as applied to his property, is confiscatory. Petitioner has used that part of his property located in a commercial zone for the commercial removal and sale of sand and has been permitted to excavate other parts of his property to prepare it for residential *703 purposes and he has sold off a part for a residential subdivision. The fact that he is not permitted to excavate on a portion of his property does not mean he cannot make a reasonable return upon the property as a whole. Furthermore, the Island Hill property may be valuable as an adjunct to the remainder of the land. The Monroe County Planning Board has suggested that this hill be a part of an average density residential development pursuant to section 281 of the Town Law and that the open space of the hill be utilized to allow increased density of development on petitioner’s adjoining land. And the Town Board is receptive to this proposal.
Nor is the petitioner precluded from making a further application when he is ready to develop the land for residential subdivision purposes. A subdivision may not now be laid out because of the nonavailability of sewers in the area. No provision has been made in petitioner’s application for improved roadways, storm or sanitary sewers, or other utilities. There is no indication that the development of this Island Hill for residential purposes is economically feasible in view of the cost of installing these improvements on this difficult terrain. And it would be unreasonable to permit the petitioner to excavate for a proposed residential development that may never take place.
As aptly stated by one of the objectors at the hearing before the Planning Board, Carol Saj: “ [I] question bringing utilities into the Island Hill * * * [I] am very seriously concerned, first of all, with his starting anything until the first is finished, and, secondly, getting the Island Hill developed in any way until he can prove that utilities can be brought into it. ’ ’
Judgment is granted for the respondents dismissing the petition, without costs.