Curtiss-Wright Corporation, Appellant, v Town of East Hampton, Respondent. (And Two Other Actions.)

Second Department, August 31, 1981

APPEARANCES OF COUNSEL

*Farrell, Fritz, Caemmerer & Cleary, P. C. (John M. Armentano, Samuel S. Tripp* and *Robert V. Guido* of counsel), for appellant.

*Smith, Finkelstein, Lundberg, Crimmins & Yakaboski (Howard M. Finkelstein* and *Frank A. Isler* of counsel), for respondent.

LAZER, J. P.

In this action, Curtiss-Wright Corporation seeks judgment declaring the unconstitutionality as applied to its property of two zoning amendments enacted by the Town Board of the Town of East Hampton which successively raised the minimum building lot requirement in the Montauk area from one-half acre to two acres. Following trial, Special Term rendered judgment declaring the current zoning classification valid, reasonable, constitutional and consonant with the town's comprehensive plan and not confiscatory. The appeals are from that judgment and from a further order, entered on January 23, 1980, by which Special Term struck its October 12, 1979 findings and conclusions and ordered that its decision of April 2, 1979 be established as the findings and conclusions of the court.

We believe affirmance is required.

In 1966 Curtiss-Wright purchased 1,357 acres of land (including an active sand and gravel mine) in the Montauk area, east of Hither Hills State Park. Subsequent conveyances between 1967 and 1972 ultimately reduced the number of acres in plaintiff's hands to 777, none of which front the ocean and all of which can be denominated as interior property. At the time of acquisition, the property lay in the Residence B single-family district in which minimum building lots of one-half acre are required. In 1968, the town planning board adopted as the official town plan a land use proposal known as the "Voorhis Plan", an action which was followed in 1972 by a massive rezoning which reclassified a great proportion of the 25,000 residentially zoned acres in the town, including those of the plaintiff, to Residence A district in which the building lot requirement is one acre. In 1974, plaintiff's land was included in a further amendment which rezoned some 12,000 acres to Residence AA, where two acres comprise the minimum lot.

In its complaint, Curtiss-Wright alleges that the amendments are: (1) confiscatory and deprive plaintiff of a reasonable return on the property; (2) irrational and without relationship to the problems they were allegedly designed to correct; and (3) not in accordance with the town's

comprehensive plan and invalid because they are in violation of sections 261 and 263 of the Town Law.

It scarcely bears repetition to note that application of a zoning restriction to a particular property effects an unconstitutional taking if it does not substantially advance legitimate public interests or denies the owner any economically viable use of his land *(Agins v City of Tiburon*, 447 US 255; see, also, *Penn Cent. Transp. Co. v New York City*, 438 US 104; *Nectow v City of Cambridge*, 277 US 183). Nevertheless, zoning ordinances, like other legislative acts, are clothed with a strong presumption of constitutionality *(Robert E. Kurzius, Inc. v Incorporated Vil. of Upper Brookville*, 51 NY2d 338, 344; *Marcus Assoc. v Town of Huntington*, 45 NY2d 501, 505; *McGowan v Cohalan*, 41 NY2d 434; *Dauernheim, Inc. v Town Bd. of Town of Hempstead*, 33 NY2d 468, 473), and while the presumption may be rebutted, the challenger's burden is heavy indeed, for unconstitutionality must be demonstrated beyond a reasonable doubt *(Robert E. Kurzius, Inc. v Incorporated Vil. of Upper Brookville, supra; Marcus Assoc. v Town of Huntington, supra; Lighthouse Shores v Town of Islip*, 41 NY2d 7).

The owner who attacks a zoning ordinance as violative of the Fifth Amendment on the ground that its economic impact amounts to confiscation "must show more than that the current zoning classification has caused a significant diminution in value, or that a substantially higher value could be obtained if an alternate use is permitted. Rather, the proper test is whether the owner can presently receive a reasonable return on his property" *(McGowan v Cohalan, supra*, p 436; *Loretto v Teleprompter Manhattan CATV Corp.*, 53 NY2d 124). Such an owner must establish affirmatively that the regulation eliminates all reasonable return *(Penn Cent. Transp. Co. v City of New York*, 42 NY2d 324; *Williams v Town of Oyster Bay*, 32 NY2d 78; *Mary Chess, Inc. v City of Glen Cove*, 18 NY2d 205), and this must be accomplished by "dollars and cents" proof *(Matter of Village Bd. of Vil. of Fayetteville v Jarrold*, 53 NY2d 254; *Spears v Berle*, 48 NY2d 254; *Matter of National Merritt v Weist*, 41 NY2d 438). To establish *de facto* confiscation, evidence of the market value of the property at the

time of acquisition as well as the value of the property as presently zoned is required *(H.J.E. Real Estate v Town of Hempstead*, 55 AD2d 927; see *Matter of Village Bd. of Vil. of Fayetteville v Jarrold, supra)*.

Here, Curtiss-Wright offered some evidence of acquisition cost—if not of acquisition value—but the primary focus of its challenge was upon the projected cost of subdivision and development of one or two acre lots. The confiscation argument was thus predicated on evidence that the development and sale of lots under either of the two zoning amendments was economically unfeasible because the cost of houses suitable for large lots plus the cost of development of such lots would result in a price far in excess of what the Montauk area market could bear. What plaintiff made no effort to prove, however, was the current value of the property or that it could not produce a reasonable return if marketed as a single tract under current zoning. The fact that plaintiff's experts could perceive no potentiality of a demand for one or two acre building lots if developed on plaintiff's property, did not compensate for the failure to establish an inability to sell the tract as a unit—particularly since several sales of substantial tracts had occurred in the Montauk area not long before the trial. The history of Long Island development reflects proof positive that land well beyond the pale of immediate subdivision or building construction can be sold and resold with significant return to investors. That its tract was quite large in size did not serve to insulate Curtiss-Wright from the general requirement that an aggrieved owner prove that its property cannot be sold as zoned (see *Williams v Town of Oyster Bay*, 32 NY2d 78, *supra; Matter of Forrest v Evershed*, 7 NY2d 256) or that such a sale will not produce a reasonable return. As we have noted, the test of constitutionality of zoning restrictions is not whether a substantially higher value can be obtained under less restrictive regulations (see *McGowan v Cohalan*, 41 NY2d 434, *supra)* but whether no reasonable return can be obtained from the property under the existing regulations. If Curtiss-Wright's acreage can be disposed of with adequate profit as a single parcel, the fact that a greater return might be obtained by subdivision or development is immaterial.

Therefore, plaintiff's economic impact claim founders because it has not been established that the zoning regulations preclude a reasonable return on its property.

Futhermore, we find the assault on the feasibility of subdivision development under current zoning to be seriously flawed. Experts testifying for both sides substantially agreed that the demand for property in Montauk is quite limited, regardless of zoning classification. At the time of trial, there were approximately 1,300 vacant lots of less than one-half acre available for development in the Montauk area and most of those were much more marketable than Curtiss-Wright lots would be because of proximity to the ocean and other amenities. At the existing rate of only 100 sales of such lots per year, the exhaustion of this inventory appears long deferred and it is thus apparent that the demand for interior lots such as those that plaintiff might offer will be concomitantly delayed as long as more desirably located lots remain in good supply. Zoning, then, is one source of plaintiff's problem in obtaining a return through subdivision of its land, but for the moment, at least, it may not be the major one. In the absence of a demonstrable demand for lots located on plaintiff's property, it has not been established that the restrictive effects of the two upward reclassifications result in confiscation (see *Heather Holding Corp. v Town of Southampton*, 59 AD2d 886).

Plaintiff's challenge to the zoning amendments has more than an economic base, however, for the argument is also made that the zoning resolutions are invalid because they are not reasonably related to a legitimate government objective (see *Agins v City of Tiburon*, 447 US 255, *supra; Loretto v Teleprompter Manhattan CATV Corp.*, 53 NY2d 124, *supra; Marcus Assoc. v Town of Huntington*, 45 NY2d 501, *supra*). The thrust of this attack is that the ordinances are arbitrary and unreasonable and that they have no substantial relationship to public health, safety, morals, or general welfare *(Euclid v Ambler Co.*, 272 US 365; *Marcus Assoc. v Town of Huntington, supra; Salamar Bldrs. Corp. v Tuttle*, 29 NY2d 221). Nevertheless, if the validity of the legislative classifications for zoning purposes are fairly debatable, they must be allowed to stand

*(Euclid v Ambler Co., supra; Stevens v Town of Huntington,* 20 NY2d 352; *Shepard v Village of Skaneateles,* 300 NY 115).

Here, two of the stated goals of the East Hampton land use plan are to maintain the natural and rural qualities of the land and control urbanization and to conserve and protect the town's water supply. Maintenance of natural and rural qualities have long been recognized as legitimate governmental purposes *(Agins v City of Tiburon, supra; Penn Cent. Transp. Co. v New York City, supra; Village of Belle Terre v Boraas,* 416 US 1; *Euclid v Ambler Co., supra)* and two-acre zoning has been sustained as a valid method of preserving such qualities and community character (see, e.g., *Levitt v Incorporated Vil. of Sands Point,* 6 NY2d 269; *Dilliard v Village of North Hills,* 276 App Div 969). And, even more recently, five-acre zoning has been approved as a means of preserving open space (see *Robert E. Kurzius, Inc. v Incorporated Vil. of Upper Brookville,* 51 NY2d 338, *supra).*

The town alleges that the restrictions at current issue serve the additional legitimate purpose of protecting and preserving the local water supply (see *Salamar Bldrs. Corp. v Tuttle,* 29 NY2d 221, *supra; Matter of Nattin Realty v Ludewig,* 67 Misc 2d 828, affd 40 AD2d 535, affd 32 NY2d 681). Our review of the record reveals that plaintiff's case left considerable doubt as to the adequacy of the water supply, both in the Montauk area and the rest of East Hampton. After testifying on direct examination that the Montauk aquifer was sufficient to support the projected population to 1995, one of Curtiss-Wright's experts disclosed on cross-examination that his conclusion was based on the assumption that the increase in population up to that date would take place on the Curtiss-Wright property and that if it increased elsewhere in the Montauk area water would have to be imported from the west or even from Connecticut. The cost and feasibility of such additional facilities was not considered by plaintiff's experts. It is also apparent from the evidence that there are potential salt water contamination problems in the Montauk area. Curtiss-Wright's experts conceded they were aware of the problems, but failed to consider any impact of higher den-

sity development on the water quality or the general ecology of the area in their studies. In our view, the town has a legitimate concern with the amount and quality of the future water supply and, on this record, at least, the limitation on density of development afforded a basis in police-power reason for enactment of the challenged ordinances.

Plaintiff's ultimate contention is that the zoning amendments are invalid on the grounds that they were enacted in violation of sections 261 and 263 of the Town Law. Section 261 is an enabling act which delegates power to adopt zoning ordinances; section 263 delineates what legitimate zoning purposes are. The requirement in section 263 that zoning regulations be in accordance with a "comprehensive plan" is not dependent on any particular document, for as the Court of Appeals has noted: "We have found the 'comprehensive plan' by examining all relevant evidence *(Rodgers* v. *Village of Tarrytown,* 302 N.Y. 115, 122, *supra; Thomas* v. *Town of Bedford,* 11 NY2d 428, 434-435, *supra).* As the trial court noted, generally New York cases 'have analyzed the ordinance * * * in terms of consistency and rationality' (40 Misc 2d 265, 267-268). While these elements are important, the 'comprehensive plan' requires that the rezoning should not conflict with the fundamental land use policies and development plans of the community (see *Santmyers* v. *Town of Oyster Bay,* 10 Misc 2d 614, 616; *Linn* v. *Town of Hempstead,* 10 Misc 2d 774; *Place* v. *Hack,* 34 Misc 2d 777; *Walus* v. *Millington,* 49 Misc 2d 104). These policies may be garnered from any available source, most especially the master plan of the community, if any has been adopted, the zoning law itself and the zoning map." *(Udell v Haas,* 21 NY2d 463, 471-472.)

In our view, the Voorhis Plan, the zoning ordinance, and the land use map more than suffice to meet the comprehensive plan criteria set out in *Udell v Haas (supra).* The zoning amendments are in accord with the town's comprehensive plan and are not violative of section 263 of the Town Law.

Finally, under the circumstances of this case, we believe Special Term was within its powers in striking the original findings of fact and defendant's motion was not untimely.

Accordingly, the judgment and order appealed from should be affirmed.

MANGANO, COHALAN and MARGETT, JJ., concur.

Judgment of the Supreme Court, Suffolk County, entered October 15, 1979, and order of the same court, entered January 23, 1980, affirmed, with one bill of costs.