JOSEPH BLITZ et al., Appellants, v TOWN OF NEW CASTLE, Respondent.

Second Department, June 6, 1983

APPEARANCES OF COUNSEL

*Shamberg, Bender, Marwell & Cherneff, P. C. (Stuart R. Shamberg* and *Robert F. Davis* of counsel), for appellants.

*Paul, Weiss, Rifkind, Wharton & Garrison (Edward N. Costikyan* and *Suzanne Last Stone* of counsel), for respondent.

OPINION OF THE COURT

*Per Curiam.*

In this action, *inter alia,* for a declaratory judgment, plaintiffs, who are the owners of an approximately 144-acre tract of land located in the Town of New Castle (as well as a contiguous approximately 105-acre tract in the neighboring town of North Castle), challenged the constitutionality of New Castle's Local Law No. 16 of 1979, which was enacted in response to court mandates as set forth in a prior action entitled *Berenson v Town of New Castle* (38 NY2d 102, 67 AD2d 506), and which amendments to the town zoning ordinance allowed the construction of multifamily housing in several designated areas of the town. In the *Berenson* action this court held that the town's former zoning ordinance, which had prohibited the construction of any multifamily housing, was unconstitutional under the standards earlier promulgated by the Court of Appeals in determining a motion for summary judgment in the case (38 NY2d 102, *supra*) and gave the town six months to comply with such standards (67 AD2d 506, 524, *supra*).

Subsequent to the amendment of the zoning ordinance (Local Laws, 1979, No. 16, adopted October 29, 1979), plaintiffs commenced this action setting forth seven causes of action, alleging, *inter alia,* that the amended ordinance failed to allow the construction of new multifamily housing adequate to meet New Castle's local housing need and its share of the regional housing need; that it contained "conditions, regulations and restrictions particularly designed to restrict, prevent, inhibit and prohibit the construction of

new multi-family housing within the Town of New Castle";
that its provisions relating to the development of multi-
family housing in the two-acre residential zone (where
plaintiffs' property was located) were not required to pro-
tect the health, safety and welfare of the town's residents
and that, as applied to their property, it deprived them of
all reasonable use of their land.

After a two-week trial involving the voluminous testi-
mony of expert witnesses for both sides, and numerous
documentary exhibits, the ordinance as amended was sus-
tained in all respects. Plaintiffs now appeal from that
judgment, contending that the 1979 amendment to the
zoning ordinance fails to comply with the judicial man-
dates set forth in the *Berenson* case; and that the amend-
ment is unconstitutional as applied to their property be-
cause they are unable to realize an adequate return on
their investment under any of the uses permitted and is
thus confiscatory. It is plaintiffs' further contention that
several secondary provisions of the amendment applicable
to their property are also unconstitutional and a nullity.

Local Law No. 16 of 1979 contains five provisions for the
construction of multifamily housing in New Castle. The
first two create specific central urban districts (MFR-C, in
the center of Chappaqua, and MFR-M, in the center of
Millwood). In the MFR-C district, multifamily housing is
permitted at a density of 10 to 20 units per acre, assuming
a two-bedroom unit average size. The minimum density of
10 units per acre can be increased to a maximum of 20
units per acre according to a system of incentive density
bonuses, if the developer provides certain additional fea-
tures such as senior citizen or low-to-moderate-income
housing, units for the handicapped, rental units, energy-
saving devices, recreational facilities, off-site improve-
ments, and underground parking. In the MFR-M district,
densities of 6.6 to 13.2 units per acre are allowed, with the
same types of incentive density bonuses increasing the
density from the minimum to the maximum of the permit-
ted range. The ordinance also provides for a multifamily
planned development (MFPD) in a "floating zone" on any
tract of five or more acres within one-half mile of a busi-
ness district (including the Briarcliff Manor and Mount

Kisco hamlets outside the borders of New Castle) with densities of 4.5 to 9 units per acre, and further allows several owners to combine their tracts to attain the minimum five-acre plottage requirement. Accessory apartments may also be constructed within single-family homes in any part of the town, provided that the accessory apartment occupies no more than one fourth of the total floor space.

Finally, the amended ordinance allows the creation of a large multifamily designed residential development (MFDRD) by special permit on any tract with a minimum size of 100 times the applicable single-family lot size permitted in such district by special permit, in any one-half, one- or two-acre residential district of the town (once again, several owners may combine their holdings to reach the minimum size). With respect to an MFDRD application, the town board is mandated to review various considerations, primarily those of environmental conservation and harmony with the adjacent single-family residential districts, before granting a special permit under this provision. The amended ordinance further allows the owners of tracts which span the border between New Castle and adjacent towns to include such adjacent property located outside New Castle in computing the 100-times requirement, provided that the board of the adjacent town approves a co-ordinated plan for the development of its portion of the land, which development plan need not be of the same type as that for the New Castle property. The basic MFDRD density is 1.4 two-bedroom units per acre in a one-acre district and .7 units per acre in a two-acre district, with similar provisions for increased density where there is a mix of smaller and larger units. Certain incentive density bonuses allow increases of up to 20% of the basic permitted density if the developer includes certain features for which incentives are provided in the MFR-C, MFR-M and MFPD areas, such as low-income housing and underground parking.

We note at the outset that the *Berenson* test, as reaffirmed by the Court of Appeals in *Robert E. Kurzius, Inc. v Incorporated Vil. of Upper Brookville* (51 NY2d 338, cert den 450 US 1042) has two branches. First, a zoning ordi-

nance must provide a properly balanced and well-ordered plan for the community; second, it must adequately consider regional needs and requirements. A zoning ordinance carries with it the presumption of constitutionality attached to any legislative act, and it will be sustained unless the challenging party succeeds in proving beyond a reasonable doubt that it is not designed to accomplish a legitimate purpose (*Robert E. Kurzius, Inc. v Incorporated Vil. of Upper Brookville, supra,* p 344).

■ In the within instance, plaintiffs clearly failed to sustain their burden of proving their contention that the amended ordinance fails to comply with the judicial mandates enunciated in the *Berenson* decisions. First, the multifamily ordinance satisfies the requirement that the town board provide a properly balanced and well-ordered plan for the community. Commissioner Eschweiler, on behalf of the Westchester County Planning Department, gave his unequivocal stamp of approval to the amended ordinance, citing its use of radiating densities of development, its allowing more concentrated development near existing population centers with sufficient infrastructure to support increased population (the MFR-C district in Chappaqua and the MFR-M district in Millwood), its providing for less concentrated development around existing business districts (the MFPD "floating zone"), and its creating a radically innovative concept (the MFDRD) which would allow multifamily housing in outlying rural areas of the town while preserving current rural character and protecting attractive environmental amenities. The testimony of the town planning consultant demonstrated that a large amount of effort and consideration was put into the preparation of the amended ordinance, and that it was the product of a conscientious decision-making process. While plaintiffs make much of the fact that almost 90% of the town's land area remains zoned for single-family housing, in one- and two-acre zones, this argument fails to take into account, (1) the possibility of MFDRD's by special permit; (2) MFPD's; (3) the fact that 72.5% of the new units whose construction the town's housing implementation plan projects for the next decade will be multifamily, a percentage which is subject to increase under provisions (1) and (2)

above; and (4) the fact that the town's housing implementation plan and environmental impact statement provide for a possible population growth of approximately one third during the coming decade. Most of the increase would be attributable to the construction of multifamily housing. On its face the amended ordinance clearly meets the test of a community plan.

The evidentiary, factual and legal considerations surrounding the second branch of the *Berenson* test are more complex; however, in the end we conclude that here, too, the amended ordinance should survive plaintiffs' constitutional challenge. The first factual issue before us is the extent of the regional housing need. The Court of Appeals in *Berenson* called for legislative action to determine that need, citing the anomaly of a court performing the essentially legislative function of planning. The appointment of a blue ribbon committee, and the subsequent adoption of its report by the county board of legislators as the county housing policy, were a direct response to this call. The town urges that the county housing policy, with its stated goal of 50,000 new housing units for the decade ending in 1989, should carry with it the same presumption of validity as any other legislative act; plaintiffs, on the other hand, contend that this court should disregard the legislative findings and should itself find, from the evidence before it, what is the actual extent of the regional housing need. We agree with the town that the 50,000-unit goal is presumptively valid and the evidence at trial clearly established the rationality and soundness of that legislative finding. The testimony of the town's witnesses demonstrated a basis for the 50,000-unit figure in demographic data (population, labor and work force, household size), and also established that the increased need for housing resulting from this factor was balanced by the decreased need resulting from the increase in two-worker households.

In contrast, the testimony of the plaintiffs' planning consultant raised considerable question as to the validity of the 50,000-unit goal. In arriving at his approximately 75,000-unit figure, this witness consistently took the highest possible estimate of every available factor which would increase the need (e.g., attrition, population growth, in-

creased employment, decrease in average household size) but ignored all factors which would serve to decrease the need. In this regard he actually ignored the 1980 census figures which would have served to correct the factually inaccurate assumptions (e.g., as to population growth and actual housing losses). In summary, while the 50,000-unit figure contains some margin of error in either direction, we conclude that it constitutes the best possible estimate of the housing needs of Westchester County for the coming decade and that as a legislative finding it is entitled to great weight and the presumption of validity (cf. *Robert E. Kurzius, Inc. v Incorporated Vil. of Upper Brookville*, 51 NY2d 338, 344, cert den 450 US 1042, *supra*, citing *Town of Huntington v Park Shore Country Day Camp of Dix Hills*, 47 NY2d 61, 65, and *Marcus Assoc. v Town of Huntington*, 45 NY2d 501, 505).

Having established the regional housing need, we now address the issue of whether New Castle's amended multi-family ordinance has made adequate provision for meeting such need. We conclude that it has and that it should be upheld under the *Berenson* standard. First, while the New York courts have consistently rejected any "fair share" doctrine which would impose specific unit goals or quotas of housing on a municipality (see *Berenson v Town of New Castle*, 67 AD2d 506, 515-522, *supra*) there are relevant data which may indicate whether New Castle's provisions for housing are at all commensurate with some *general* notion of its expected contribution to the regional housing need. As was conclusively demonstrated, New Castle's housing implementation plan, when compared with those of other municipalities in northern Westchester County, projects the construction of a significantly greater number of new housing units than its percentage of land area, population, housing units and vacant land would seem to require. Even allowing for the fact that as a result of prior exclusionary zoning, New Castle's population and housing stock are lower than they would have been under free market conditions, the projected housing contribution is well within the expected proportionate share.

Plaintiffs' basic contention, however, is that it is not the number of housing units *allowed* or *possible* under the

ordinance, but the number that will *actually* or *probably be built* that is determinative of whether such ordinance satisfies the second branch of the *Berenson* test (see *Berenson, supra,* for a discussion of this issue). Plaintiffs contend that it is the function of the municipal zoning ordinances to provide affirmatively for the creation of all necessary housing. We rejected this argument in *Berenson* and do so again today. Municipal zoning ordinances can act, on the one hand, as obstacles or hindrances to the construction of certain types of housing by affirmatively prohibiting it or making it physically or economically difficult or impossible, or, on the other hand, as encouragements or incentives thereto by removing those obstacles or providing affirmative assistance to it, such as the MFPD, MFDRD and incentive density bonus provisions of the New Castle ordinance. Essentially, however, zoning ordinances will go no further than determining what *may* or *may not be built;* market forces will decide what will actually be built, in the absence of government subsidies. Thus, in terms of low-to-moderate-income rental housing — generally conceded to be the most pressing need (see *Berenson v Town of New Castle,* 67 AD2d 506, 519-521, *supra*) — even the most liberal zoning ordinance, in the absence of affirmative governmental action to shift the balance of market forces, will have no success in promoting such housing construction. Thus, our concern is to determine whether, on its face, the amended ordinance will allow the construction of sufficient housing to meet the town's share of the region's housing needs, particularly for multifamily housing, *assuming that such construction be both physically and economically feasible.*

We are satisfied that the amended ordinance facilitates the development of a sufficient number of housing units to satisfy any reasonable estimate of the town's proportionate expected contribution and this test satisfies the *Berenson* criterion as to regional need.

■ In challenging the reasonableness of the special MFDRD requirements, we reiterate that the ordinance will be presumed to be constitutional unless plaintiffs can establish beyond a reasonable doubt that such ordinance has no rational basis and serves no governmental objective

(see *Berenson v Town of New Castle,* 38 NY2d 102, *supra; Robert E. Kurzius, Inc. v Incorporated Vil. of Upper Brookville,* 51 NY2d 338, cert den 450 US 1042, *supra).* We conclude that plaintiffs have failed to successfully challenge either of the above criteria. First, the town's witnesses established beyond any doubt that the "100 times" — minimum area requirement satisfies the legitimate governmental objectives of ensuring orderly development of rudimentary rural areas, while protecting environmental considerations, as well as providing for the harmonious co-ordination of such development with surrounding single-family areas. In addition, the "100 times" figure, in establishing the minimum number of units that would make the installation of a private water and sewer system costworthy, has a rational basis in the economics of development. Furthermore, the two-town approval provision has a rational basis in its ensuring the co-ordinated development of property across town lines.

Further, the plaintiffs' contention that the special permit requirement constitutes an unlawful delegation of legislative authority to the town planning board because it does not set adequate standards for the exercise of such authority, has no basis. We note that the MFDRD provisions of the amended ordinance state in detail the specifications to which such a development must conform and provide adequate guidelines for the exercise of power by the planning board. We conclude, therefore, that the plaintiffs have failed to sustain their burden of proof on this particular issue and that these provisions of the amended ordinance are valid.

We now address plaintiffs' final claim that the amended ordinance is confiscatory as applied to their property. In challenging the constitutionality of a zoning classification as applied to particular property, a landowner charging confiscation must establish beyond a reasonable doubt that he is unable to realize a reasonable return on his property under each and every one of the permitted uses in such district. In so doing, he must show not that he could realize a greater return under a prohibited use, but that none of the permitted uses will allow him to realize a reasonable profit from his property. There must be a tangible "dollars

and cents" showing of the acquisition price of the property to establish a cost basis, the return realized by him from the sale of any other portions of the property, if there has been any partial sale, and of a bona fide effort to use, sell or lease the property in accordance with permitted uses. So long as the zoning classification is "fairly debatable", it will be allowed to stand (*Village of Euclid v Ambler Realty Co.*, 272 US 365, 388; *Spears v Berle*, 48 NY2d 254; *McGowan v Cohalan*, 41 NY2d 434; *Matter of Grimpel Assoc. v Cohalan*, 41 NY2d 431; *Dauernheim, Inc. v Town Bd. of Town of Hempstead*, 33 NY2d 468; *Williams v Town of Oyster Bay*, 32 NY2d 78; *Salamar Bldrs. Corp. v Tuttle*, 29 NY2d 221; *Koff v Incorporated Vil. of Flower Hill*, 29 AD2d 655, affd 28 NY2d 694; *Stevens v Town of Huntington*, 20 NY2d 352; *Curtiss-Wright Corp. v Town of East Hampton*, 82 AD2d 551; *Dodge Mill Land Corp. v Town of Amherst*, 61 AD2d 216; *Matter of Pecora v Gossin*, 78 Misc 2d 698, affd 49 AD2d 668; *Wackerman v Town of Penfield*, 47 AD2d 988; *Matter of Moore v Nowakowski*, 44 AD2d 901, mod on other grounds 46 AD2d 996).

We note that this standard of proof is to be contrasted with the much lighter burden imposed upon a landowner seeking an area variance for his property, which standard was incorrectly invoked by the plaintiffs in their brief herein, and was articulated by the Court of Appeals in *Matter of Fulling v Palumbo* (21 NY2d 30) and was followed in *Matter of National Merritt v Weist* (41 NY2d 438), *Matter of Cowan v Kern* (41 NY2d 591), and *Matter of Village Bd. of Vil. of Fayetteville v Jarrold* (53 NY2d 254).

■ We conclude that the plaintiffs have not sustained the burden of proof by a substantial evidentiary showing with regard to this issue of confiscation. While plaintiffs presented estimates of the return they could realize on developing the property in question under each of the permitted uses, and while they further demonstrated by such estimates that they were unable to make a profit in selling the property when compared with the cost of its acquisition and development, we note that there were several glaring and fundamental defects in their proof. First, their estimate of the cost basis of the land as supplied by their appraiser was not factually established and was

excessive in value by some $241,000. In addition, the requisite proof required concerning the return by virtue of the sale of a portion of the property, or of any efforts to use, sell or lease the remaining property, was not adduced. Further, there is some question as to the methodology of computing developmental costs used by the expert witnesses of the plaintiffs. Finally, as was demonstrated by the testimony of the witnesses for the town, the postulated scheme for development offered by the plaintiffs was one that rarely had been attempted, never had succeeded, and heretofore had resulted in a net loss.

In contrast, and although not obligated to do so, the witnesses for the town demonstrated credibly the ability of plaintiff to realize a profit in the development of the property as a 117-unit MFDRD in conjunction with a 53-unit cluster development of the property located in North Castle, and with the two developments sharing common sewer and water facilities. Since the plaintiffs bore the burden of proving beyond a reasonable doubt that none of the permitted uses would allow them a reasonable profit by presenting concrete "dollars and cents" proof of that fact, we must conclude that plaintiffs have failed to sustain their burden of proof in this regard and the amended ordinance as applied to the subject property must be upheld as being constitutional. However, it was error to dismiss the complaint in this action for, *inter alia,* a declaratory judgment (see *Lanza v Wagner,* 11 NY2d 317, 334, app dsmd 371 US 74), hence a declaration of constitutionality is required.

TITONE, J. P., BRACKEN, NIEHOFF and RUBIN, JJ., concur.

Judgment of the Supreme Court, Westchester County, entered February 4, 1982, modified, on the law, by adding a provision thereto declaring that Local Law No. 16 of 1979, amending the Zoning Ordinance of the Town of New Castle, is constitutional. As so modified, judgment affirmed, with costs to the defendant.