OPINION OF THE COURT
Gabrielli, J.
Plaintiffs, in this action for a declaratory judgment, attack a zoning ordinance of the defendant Village of Upper Brookville which creates, in certain areas of the village, minimum lot requirements of five acres. The ordinance in question was adopted some 20 years ago and, while plaintiffs originally attacked the ordinance on various grounds, the Appellate Division by its holding and the plaintiffs, in this court by their briefs and argument, have narrowed the law issues to the sole contentions that the ordinance is constitutionally void and also invalid because not enacted in compliance with section 7-704 of the Village Law. The Appellate Division sustained plaintiffs’ claim of constitutional invalidity and struck down the ordinance. We reverse and sustain the ordinance.
The Village of Upper Brookville, located on the north shore of Long Island, enacted a zoning ordinance in 1960 which required a minimum lot size of at least two acres in some portions of the village, and at least five acres in other portions. At that time the village contained a number of relatively peaceful and rural areas. The ordinance was enacted by the village some two months after its approval and adoption of a comprehensive master plan involving the entire 2,737 acre area of the village. This plan was the culmination of an 18-month study conducted under the direction of Francis Dodd McHugh, an architect and professional planner engaged by the village. The master plan as finally adopted was the product of intensive studies made by both the village planning board and the board of trustees, and was subjected to and widely discussed at several announced public hearings.
In 1968, the corporate plaintiff purchased a 60-acre tract of land within the village. Pursuant to the provisions of the ordinance adopted some eight years prior to plaintiffs’ purchase of his acreage, 10 acres of this land were zoned for 2-acre lot development, and the remaining land was in a zone *343 requiring a minimum lot size of 5 acres. A short time later, the corporate plaintiff received subdivision approval for five 2-acre lots to be placed on the 10-acre parcel, and subsequently erected and sold five houses on these lots. Plaintiffs later commenced an action attacking the 5-acre minimum lot requirement on their remaining 50 acres alleging, among other things, that the ordinance was unconstitutional as an unreasonable and improper exercise of the police power. It remains undisputed that the subject property lies within a coherent area characterized by estate-type development and is generally bounded by properties developed on a large lot basis.
In general, the enactment of a zoning ordinance is a valid exercise of the police power if its restrictions are not arbitrary and they bear a substantial relation to the health, welfare and safety of the community (Euclid v Ambler Co., 272 US 365, 395). In New York, the Legislature has delegated zoning power to village boards pursuant to section 7-700 of the Village Law. Such delegation is not, of course, "coterminous with stated police power objectives and has been considered less inclusive traditionally” (Matter of Golden v Planning Bd. of Town of Ramapo, 30 NY2d 359, 370, app dsmd 409 US 1003). Section 7-704 of the Village Law provides that these zoning regulations must be made in accordance with a comprehensive plan, and may be made only for certain enumerated purposes, including the promotion of health and the general welfare of the village. Thus, both the constitutional and statutory validity of a zoning ordinance depend "on the facts of the particular case and whether it is 'really designed to accomplish a legitimate public purpose’ ” (Berenson v Town of New Castle, 38 NY2d 102, 107, quoting Matter of Wulfsohn v Burden, 241 NY 288, 299).
 A zoning ordinance will be invalidated on both constitutional and State statutory grounds if it was enacted with an exclusionary purpose, or it ignores regional needs and has an unjustifiably exclusionary effect (Matter of Golden v Planning Bd. of Town of Ramapo, supra; Berenson v Town of New Castle, supra). However, in this case, because there was insufficient and, indeed, a complete absence of proof of regional needs or a discriminatory purpose and no proof that the zoning ordinance in question has excluded or will exclude persons having a need for housing within the municipality or within the region, the issues are narrowed to the questions of whether five-acre zoning is exclusionary per se and an imper *344 missible exercise of the police power, and whether the village acted within the ambit of section 7-704 of the Village Law.
 As legislative acts, zoning ordinances carry a presumption of constitutionality (Town of Huntington v Park Shore Country Day Camp of Dix Hills, 47 NY2d 61, 65; Marcus Assoc. v Town of Huntington, 45 NY2d 501, 505). We have stated on several occasions that this presumption is rebut-table, but that unconstitutionality must be demonstrated beyond a reasonable doubt (e.g., Marcus Assoc. v Town of Huntington, supra). This burden has not here been met. As Judge Fuld stated in Rodgers v Village of Tarrytown (302 NY 115, 121): "[T]he power of a village to amend its basic zoning ordinance in such a way as reasonably to promote the general welfare cannot be questioned. Just as clearly, decision as to how a community shall be zoned or rezoned, as to how various properties shall be classified or reclassified, rests with the local legislative body; its judgment and determination will be conclusive, beyond interference from the courts, unless shown to be arbitrary, and the burden of establishing such arbitrariness is imposed upon him who asserts it. In that connection, we recently said (Shepard v. Village of Skaneateles, 300 N. Y. 115, 118): 'Upon parties who attack an ordinance * * * rests the burden of showing that the regulation assailed is not justified under the police power of the state by any reasonable interpretation of the facts. "If the validity of the legislative classification for zoning purposes be fairly debatable, the legislative judgment must be allowed to control.” (Village of Euclid v. Ambler Realty Co., 272 U. S. 365, 388; see, also, Town of Islip v. Summers Coal & Lbr. Co., 257 N. Y. 167, 169, 170; Matter of Wulfsohn v. Burden, 241 N. Y. 288, 296-297.)’ ”
 The zoning power, when properly used, is an effective means to promote the public welfare. Large-lot zoning has also been used to achieve this end, and minimum acre lot restrictions have been upheld on several occasions for varying reasons (see 1 Anderson, New York Zoning Law and Practice [2d ed], § 7.11) including, most recently, the preservation of open-space land and the protection of a municipality’s residents from the ill-effects of urbanization (Agins v Tiburon, 447 US 255, 261-262). We realize, of course, that large-lot zoning may also be used as a means to exclude persons of low or moderate income; and as we have stated before, we will not countenance community efforts at exclusion under any guise *345 (Matter of Golden v Planning Bd. of Town of Ramapo, 30 NY2d 359, 378, app dsmd 409 US 1003, supra).
The tests for determining when large-lot zoning has been used in an impermissible manner are suggested by our decision in Berenson v Town of New Castle (38 NY2d 102, supra). In that case we dealt with the validity of an ordinance excluding multifamily housing as a permitted use. There we expressed our concern for balanced and integrated communities, as well as our concern that regional needs be met. These concerns gave rise to a two-part test. First, the local board is required to provide a properly balanced and well-ordered plan for the community. Secondly, in enacting the zoning ordinance, consideration must be given to regional needs and requirements. This portion of the test was fashioned to meet the demands of both the Constitution and New York’s statutory scheme, because under either basis the regulation must promote the regional welfare (see Developments in the Law— Zoning, 91 Harv L Rev 1427, 1638). It requires a "balancing of the local desire to maintain the status quo within the community and the greater public interest that regional needs be met” (Berenson v Town of New Castle, supra, p 110). In this regard we there noted that "[s]o long as the regional and local needs for such housing were supplied by either the local community or by other accessible areas in the community at large, it cannot be said, as a matter of law, that such an ordinance had no substantial relation to the public health, safety, morals or general welfare” (supra, p 111).
Generally then, a zoning ordinance enacted for a statutorily permitted purpose will be invalidated only if it is demonstrated that it actually was enacted for an improper purpose or if it was enacted without giving proper regard to local and regional housing needs and has an exclusionary effect. Once an exclusionary effect coupled with a failure to balance the local desires with housing needs has been proved, then the burden of otherwise justifying the ordinance shifts to the defendant (see Developments in the Law — Zoning, 91 Harv L Rev 1427, 1641). Such is not, however, the case before us.
In the instant case, plaintiffs attempted to show that the enactment of the village ordinance was motivated by an improper purpose by pointing to a portion of the testimony of the architect retained by the village board. In his testimony he stated that he had consulted with people within the village including, of course, large landowners. This testimony does *346 not and cannot sustain the plaintiffs’ burden of proving an exclusionary purpose, nor does it demonstrate any such purpose, particularly when coupled with the other evidence presented in this case. The record shows clearly that the purpose of the ordinance was to preserve the open-space areas of the village, which may be a legitimate goal of multiacre zoning (see Agins v Tiburon, 447 US 255, supra). Additionally, plaintiffs have not demonstrated that the ordinance in question was not enacted in accordance with, a comprehensive master plan, or that pressing regional needs were ignored in formulating the oridance.* There was no proof that persons of low or moderate incomes were foreclosed from housing in the general region because of an unavailability of properly zoned land. In fact, there was no showing of need in the village for lots of less that five acres. Thus, plaintiffs failed to prove that the two-pronged Berenson test had not been met. Absent a showing by plaintiff of an exclusionary purpose behind a zoning ordinance, or that the zoning authority had failed to meet the criteria set forth in Berenson, the presumption of constitutionality which accompanies the legislative act must prevail unless the ordinance is without a doubt facially invalid. Based upon the record before us, we cannot say that the ordinance in question was an unreasonable and improper exercise of the police power, or beyond the power delegated by section 7-704 of the Village Law.
Although some courts have assertedly found multiacre zoning to be per se exclusionary and thus invalid (Developments in the Law—Zoning, 91 Harv L Rev 1427, 1641), we do not so hold because of what we perceive to be legitimate purposes of such zoning (see Agins v Tiburon, 447 US 255, supra; Levitt v Incorporated Vil. of Sands Point, 6 NY2d 269). In regard to a related question, the Supreme Court has noted that “[a] quiet place where yards are wide, people few, and motor vehicles restricted are legitimate guidelines in a land-use project addresed to family needs” (Village of Belle Terre v Boraas, 416 US 1, 9). Although enviromental factors may justify large-lot zoning, we do not hold that this type of zoning is permissible without qualification, because minimum lot requirements may involve exclusionary practices.
*347 We recognize that area zoning of this nature might in some circumstances not here present tend to prevent some individuals from making use of zoned land, just as any zoning ordinance tends to prevent certain other desired uses. Therefore, in order to withstand a claim of the potential for an exclusionary effect, these ordinances must be motivated by a proper purpose. The contrary has not here been demonstrated.
In Berenson we pointed out the anomaly of a court’s being required to perform the tasks of a regional planner, since zoning and regional planning are essentially legislative acts (Berenson v Town of New Castle, 38 NY2d 102, 111, supra). Since that time several comprehensive plans for the region have been developed. However, because these studies were not part of the record on appeal, they could not be considered by the court (see Matter of Levine v New York State Liq. Auth., 23 NY2d 863). Nonetheless, they illustrate the approach to regional zoning problems which was favored in Berenson.
Upon the record before us, plaintiffs have not met their burden of proving an exclusionary purpose or noncompliance with the Berenson criteria. They have thus failed to overcome the presumption of constitutionality which attaches to the village ordinance in question, and have failed to demonstrate that the ordinance did not meet the requirements of the Village Law. We also find the other arguments put forth by plaintiffs to be without merit.
Accordingly, the order should be reversed, with costs, and the judgment of Supreme Court, Nassau County, declaring the ordinance to be valid, reinstated.
Chief Judge Cooke and Judges Jasen, Jones, Wachtler, Fuchsberg and Meyer concur.
Order reversed, with costs, and the judgment of Supreme Court, Nassau County, reinstated.

 Although regional needs may presently be met, this does not foreclose a zoning ordinance from all future inquiry. As population patterns shift and the demand for housing in a given region necessarily increases, a re-examination of an existing zoning scheme may be warranted (see County Comrs. of Queen Anne’s County v Miles, 246 Md 355; see, also, Steel Hill Dev. v Town of Sanbornton, 469 F2d 956).