LEONARD P. ALLEN et al., Respondents, v TOWN OF NORTH HEMPSTEAD, Appellant, et al., Defendant.

Second Department, August 13, 1984

APPEARANCES OF COUNSEL

*Robert F. Dolan, Town Attorney,* for appellant.

*Ronald J. Rosenberg* (*William Birney* of counsel), for respondents.

*Cole & Deitz* (*Joseph DiBenedetto* and *Thomas J. Quigley* of counsel), for Residents for a More Beautiful Port Washington, *amicus curiae.*

OPINION OF THE COURT

*Per Curiam.*

Plaintiffs are nonresidents of the Town of North Hempstead who are interested in purchasing a condominium in a development constructed in a "Golden Age Residence District", a concept established in article X of chapter 70 of the

Code of the Town of North Hempstead to enable private developers to build multifamily housing appropriate for the needs of senior citizens. Plaintiffs meet the age requirements for this special residence district contained in article X (§ 70-89, subd A) of chapter 70 of the Code of the Town of North Hempstead, as plaintiff Leonard P. Allen is over 62 years of age. They are precluded from purchasing a unit in this development, however, as they have not satisfied the one-year durational residency requirement imposed by subdivision B of section 70-89 of the Town Code as an additional condition precedent for applicants to occupy housing in a "Golden Age Residence District". Subdivision B of section 70-89, which plaintiffs have challenged in the instant declaratory judgment action, provides as follows: "Senior Citizens who apply for residence in a Golden Age Residence District shall have legally resided in the Town of North Hempstead for at least one (1) year previous to the date of said application".

We conclude that the above durational residency requirement is invalid and unconstitutional, but for different reasons than those articulated by Special Term (121 Misc 2d 795). There is no need to reach the constitutional equal protection analysis employed by Special Term, as adequate bases for the invalidation of the challenged portion of the zoning ordinance of the Town of North Hempstead exist in the principles governing judicial review of such ordinances developed by the decisional authority of this State. Generally, a municipality will be allowed wide latitude in the exercise of its police power, as reflected in the enactment of local zoning ordinances (see *Village of Belle Terre v Boraas,* 416 US 1; *Robert E. Kurzius, Inc. v Incorporated Vil. of Upper Brookville,* 51 NY2d 338, 343, cert den 450 US 1042). Therefore, such zoning ordinances have normally been subject to the usual standard of judicial scrutiny for economic and social legislation, and will pass muster under both the Federal and State Constitutions if the restrictions contained therein are not arbitrary and bear a rational or substantial relationship to a legitimate governmental interest or objective (see *Village of Belle Terre v Boraas, supra,* p 8; *Robert E. Kurzius, Inc. v Incorporated Vil. of Upper Brookville, supra,* p 343). The permissible objectives

of local zoning ordinances are broadly defined by section 261 of the Town Law as "promoting the health, safety, morals, or the general welfare of the community".

This is not to say that every zoning ordinance will survive even this liberal and deferential standard of judicial review. In *Group House v Board of Zoning & Appeals* (45 NY2d 266, 271) the Court of Appeals stated, "[w]hile the power to zone is a broad one, it is not without limit. It may be exercised only in pursuit of some valid public purpose and cannot serve to justify arbitrary exclusionary efforts" (see, also, *Matter of Golden v Planning Bd.,* 30 NY2d 359, 378, app dsmd 409 US 1003). One such limitation on the power of municipalities to enact zoning ordinances recognized by the decisional authority is that such ordinances may regulate and restrict the uses of property, but may not place restraints upon the users or owners of that property (see *Matter of Dexter v Town Bd.,* 36 NY2d 102; *Matter of Summit School v Neugent,* 82 AD2d 463; *Matter of Weinrib v Weisler,* 33 AD2d 923, affd 27 NY2d 592; see, also, Town Law, § 261).

There have been some limited exceptions to this general prohibition against zoning ordinances regulating the users or owners of property, most notably ordinances which create special residence districts for senior citizens similar to the "Golden Age Residence District" established by the Town of North Hempstead (see *Maldini v Ambro,* 36 NY2d 481, app dsmd & cert den 423 US 993; *Campbell v Barraud,* 58 AD2d 570). In *Maldini v Ambro (supra),* the Court of Appeals upheld a zoning ordinance creating a "Retirement Community District" as a valid exercise of the police power of a municipality, as its purpose and effect was inclusionary, rather than exclusionary. Senior citizens were held to constitute a category of persons who generally require more affordable housing suited to their particular needs and " '[s]enior citizenship' may be more appropriately regarded as a stage in life within the normal expectancy of most people than as an unalterable or obstinate classification like race" (*Maldini v Ambro, supra,* p 488). The same, however, is not true with respect to the durational residency requirement imposed by the Town of North Hempstead as an additional condition for senior citizens who

wish to obtain housing in its "Golden Age Residence Districts". Unlike advanced age, residency within the Town of North Hempstead is not a status which people are likely to attain in the normal course of their lives. This is particularly true in the situation at bar, as the ordinance creating the "Golden Age Residence Districts" was based upon an implicit finding that appropriate, affordable housing for the elderly was not generally available within the Town of North Hempstead, whose housing stock is comprised predominantly of single-family residences. Therefore, plaintiffs and other similarly situated nonresident senior citizens are effectively prevented from moving to the Town of North Hempstead, altogether, if they are precluded from obtaining housing in a "Golden Age Residence District".

The decisional authority of this State regulating exclusionary zoning provides a further basis for invalidating the durational residency requirement at bar. The Court of Appeals stated in *Robert E. Kurzius, Inc. v Incorporated Vil. of Upper Brookville* (51 NY2d 338, 343, *supra*), "[a] zoning ordinance will be invalidated on both constitutional and State statutory grounds if it was enacted with an exclusionary purpose, or it ignores regional needs and has an unjustifiably exclusionary effect". The court went on to explain that a showing that a zoning ordinance fails to comply with one or both of the elements of the above standard would overcome the presumption of constitutionality normally accorded to such ordinances. "Generally then, a zoning ordinance enacted for a statutorily permitted purpose will be invalidated only if it is demonstrated that it actually was enacted for an improper purpose or if it was enacted without giving proper regard to local and regional housing needs and has an exclusionary effect. Once an exclusionary effect coupled with a failure to balance the local desires with housing needs has been proved, then the burden of otherwise justifying the ordinance shifts to the defendant (see Developments in the Law — Zoning, 91 Harv L Rev 1427, 1641)." (*Robert E. Kurzius, Inc. v Incorporated Vil. of Upper Brookville, supra,* p 345.)

The durational residency requirement for the "Golden Age Residence Districts" established by subdivision B of section 70-89 of the Code of the Town of North Hempstead

fails to satisfy both the exclusionary purpose and the exclusionary impact elements of the test articulated in *Robert E. Kurzius, Inc. v Incorporated Vil. of Upper Brookville* (51 NY2d 338, *supra*). The objectives of this durational residency requirement, reflected in statements made by the Town Supervisor and councilmen at the meeting of the Town Board at which it was adopted, include assisting local senior citizens adversely affected by inflation in housing costs and freeing single-family housing vacated by elderly persons who move to "Golden Age Residence Districts" for younger families. After registering his affirmative vote for the amendments to article X of chapter 70 of the town zoning ordinance which created the "Golden Age Residence District", North Hempstead Town Supervisor Michael J. Tully stated, "the Senior Citizen population will soon be equaling 25% of our population. They are the people that helped to make this Town what it is. They are entitled to our attention". These remarks reflect governmental objectives which have been held to be illegitimate in previous decisions, favoring long-term residents of a State or community in the allocation of government ber·efits or services, over nonresidents or recent migrants, based upon their past contributions to the jurisdiction (see *Zobel v Williams,* 457 US 55, 68; *Memorial Hosp. v Maricopa County,* 415 US 250, 266; *Shapiro v Thompson,* 394 US 618, 632). Moreover, the durational residency requirement bears no rational relationship to the laudable goal of providing appropriate and affordable housing for senior citizens, reflected in the ordinance creating the "Golden Age Residence Districts" (see *Robert E. Kurzius, Inc. v Incorporated Vil. of Upper Brookville, supra,* p 343).

The durational residency requirement at bar, likewise, fails the exclusionary impact element of the test in *Robert E. Kurzius, Inc. v Incorporated Vil. of Upper Brookville* (*supra*), which is based upon principles enunciated in the earlier decision of *Berenson v Town of New Castle* (38 NY2d 102). In the latter case, the Court of Appeals held that a zoning ordinance must fulfill the dual objectives of providing a "properly balanced and well ordered plan" for the needs of the community involved and the giving of

consideration to the housing needs of the region in which that community is located (*Berenson v Town of New Castle, supra,* p 110). In order to satisfy the latter requirement of giving proper consideration to regional needs, "[t]here must be a balancing of the local desire to maintain the *status quo* within the community and the greater public interest that regional needs be met" (*Berenson v Town of New Castle, supra,* p 110). The durational residence requirement at bar has a more direct exclusionary effect on nonresidents like plaintiffs than the almost total exclusion of multifamily housing held to be unconstitutional by this court on remand from the Court of Appeals in *Berenson v Town of New Castle* (67 AD2d 506). Moreover, it is apparent that the needs of senior citizens in surrounding communities for suitable housing are at least as great, if not greater, than the housing needs of the elderly residents of the Town of North Hempstead. This conclusion is substantiated by an analysis of 1980 census data by the Nassau County Department of Senior Citizen Affairs indicating that the percentage increase in the elderly population of most of the neighboring municipalities equaled or exceeded the increase in the senior citizen population within the Town of North Hempstead. Nor has the defendant town presented evidence that the surrounding municipalities have made sufficient provisions for the housing needs of senior citizens in the region (see *Berenson v Town of New Castle, supra,* p 111), so as to mitigate the exclusionary impact of the durational residency requirement for the "Golden Age Residence Districts".

Accordingly, for the foregoing reasons, we conclude that the one-year durational residency requirement contained in article X (§ 70-89, subd B) of chapter 70 of the Code of the Town of North Hempstead is invalid, as it constitutes an impermissible restriction on the users or owners of property, reflects an exclusionary purpose and has an exclusionary impact coupled with a failure to consider the housing needs of senior citizens in the surrounding region. Therefore, the judgment under review, declaring the above ordinance invalid and unconstitutional, should be affirmed.

THOMPSON, J. P., BRACKEN, BOYERS and LAWRENCE, JJ., concur.

Judgment of the Supreme Court, Nassau County, entered November 23, 1983, affirmed, with costs.