NORTH SHORE UNITARIAN UNIVERSALIST SOCIETY, INC., Appellant, v INCORPORATED VILLAGE OF UPPER BROOKVILLE, Respondent.

Second Department, September 9, 1985

### APPEARANCES OF COUNSEL

*Payne, Wood & Littlejohn* (*Arden H. Rathkopf* and *Daren A. Rathkopf* of counsel), for appellant.

*Sprague, Dwyer, Aspland & Tobin, P. C.* (*Joseph L. Tobin, Jr., James J. Milligan* and *Stephen Van R. Ulman* of counsel), for respondent.

### OPINION OF THE COURT

Per Curiam.

At issue on this appeal is whether plaintiff has met its burden of proving beyond a reasonable doubt that the Building Zone Ordinance of the Village of Upper Brookville (the village) was enacted with an exclusionary purpose or that it failed to consider local and regional housing needs (*see, Robert E. Kurzius, Inc. v Incorporated Vil. of Upper Brookville,* 51 NY2d 338, 343,

cert denied 450 US 1042; *Berenson v Town of New Castle,* 38 NY2d 102; *Blitz v Town of New Castle,* 94 AD2d 92; *Allen v Town of North Hempstead,* 103 AD2d 144; *Suffolk Hous. Servs. v Town of Brookhaven,* 109 AD2d 323).

The defendant village, situated on the north shore of Nassau County in the Town of Oyster Bay, occupies a four-square-mile land area, had a population of 1,245 in 1980, and is zoned for two- and five-acre single-family dwellings. It is an open, rural woodland community, without library, bank, post office, fire department, municipal building, railroad station, sanitary sewers or sidewalks. Both bicounty and tristate comprehensive regional plans identify the village as an integral part of a low density zone on the north shore of Long Island for the preservation of scarce, open space and finite water resources (*see, infra*).

Plaintiff church, located in Plandome in the Town of North Hempstead, owns a 28-acre parcel in the village and seeks to build multiunit housing to be occupied by its elderly members, and their elderly relatives. The 100-unit project has a proposed density of approximately four units per acre, in contrast to the maximum of .5 units per acre permitted under the ordinance. Plaintiff filed a petition with the village seeking a zoning amendment to permit such housing. After a meeting of the Village Board of Trustees, the Village Attorney informed plaintiff that the village declined to make any change in its building zone ordinance and that plaintiff's petition would be referred to the village planner, who had been retained for the purpose of updating the village's master plan. Shortly thereafter, plaintiff commenced this action, *inter alia,* seeking a declaratory judgment invalidating the village's zoning ordinance.

We start with the basic proposition that zoning ordinances carry a presumption of constitutionality which must be rebutted by proof beyond a reasonable doubt (*Marcus Assoc. v Town of Huntington,* 45 NY2d 501, 505). The test of constitutionality as articulated in *Robert E. Kurzius, Inc. v Incorporated Vil. of Upper Brookville* (51 NY2d 338, *supra*) includes as an element exclusionary purpose and the two-prong test of exclusionary impact detailed in *Berenson v Town of New Castle* (38 NY2d 102, *supra*). "[A] zoning ordinance enacted for a statutorily permitted purpose will be invalidated only if it is demonstrated that it actually was enacted for an improper purpose or if it was enacted without giving proper regard to local and regional housing needs and has an exclusionary effect" (*Robert E. Kurzius, Inc. v Incorporated Vil. of Upper Brookville, supra,* at p 345).

The exclusionary purpose element of the *Kurzius* test need not detain us here. Preservation of open space through multiacre zoning is a statutorily permitted purpose (*see, Robert E. Kurzius, Inc. v Incorporated Vil. of Upper Brookville, supra,* at p 346; *Agins v Tiburon,* 447 US 255), and plaintiff has failed to show that the village ordinance actually was enacted for an improper purpose.

Turning to the two-prong *Berenson* test, plaintiff failed to prove that the village ordinance did not provide "a properly balanced and well ordered plan for the community", i.e., that it did not adequately meet the present and future needs of Upper Brookville residents (*see, Berenson v Town of New Castle,* 38 NY2d 102, 110, *supra*).

The second prong of the *Berenson* test addresses regional, as compared to local housing needs. In formulating the criteria for the second prong, the Court of Appeals stated:

"[T]he court, in examining an ordinance, should take into consideration not only the general welfare of the residents of the zoning township, but should also consider the effect of the ordinance on the neighboring communities. While regional needs are a valid consideration in zoning * * * a town need not permit a use solely for the sake of the people of the region if regional needs are presently provided for in an adequate manner. Thus, for example, if New Castle's neighbors supply enough multiple-dwelling units or land to build such units to satisfy New Castle's need as well as their own, there would be no obligation on New Castle's part to provide more, assuming there is no overriding regional need. The second branch of the test is whether the town board, in excluding new multiple housing within its township, considered the needs of the region as well as the town for such housing. So long as the regional and local needs for such housing were supplied by either the local community or by other accessible areas in the community at large, it cannot be said, as a matter of law, that such an ordinance had no substantial relation to the public health, safety, morals or general welfare.

"Zoning, as we have previously noted, is essentially a legislative act. Thus, it is quite anomalous that a court should be required to perform the tasks of a regional planner. To that end, we look to the Legislature to make appropriate changes in order to foster the development of programs designed to achieve sound regional planning" (*Berenson v Town of New Castle, supra,* at p 111).

Addressing this anomalous role of the court as regional planner, in the later case of *Kurzius,* the Court of Appeals further stated: "In *Berenson* we pointed out the anomaly of a court's being required to perform the tasks of a regional planner, since zoning and regional planning are essentially legislative acts * * * Since that time several comprehensive plans for the region have been developed. However, because these studies were not part of the record on appeal, they could not be considered by the court * * * Nonetheless, they illustrate the approach to regional zoning problems which was favored in *Berenson*" (*Robert E. Kurzius, Inc. v Incorporated Vil. of Upper Brookville,* 51 NY2d 338, 347, *supra*). Accordingly, our inquiry focuses upon whether plaintiff has proven the existence of a regional need for multiunit or high density housing for the elderly, and whether that need is presently provided for in an inadequate manner. To resolve these questions, we turn our attention to the comprehensive regional plans and studies noted in *Kurzius* which are part of the record on appeal in this case.

The Nassau-Suffolk Comprehensive Development Plan (hereinafter the Plan) addressed a concern decidedly different from that presented in *Berenson* (*supra*), where a developing town excluded multiunit housing as a permitted use. Here, the Plan addressed the problems presented in highly developed Nassau County where vacant land is scarce rather than abundant. Under the heading "Priorities", the Plan stated that there "are less than 15,000 acres of vacant land in all of Nassau County", which represent only 6% to 7% of its land area, and "is insufficient to satisfy all * * * projected needs". The Plan accorded first priority to parks and conservation, and recommended preservation of existing open space, "even when privately owned". It accorded second priority to land for apartments, and projected a need for 62,500 units by 1985, including apartments for the elderly. The Plan used a system of "corridors" and "centers". High density growth was designated for areas straddling the Long Island Expressway and the main line of the railroad (corridors), and where there was existing infrastructure (centers), i.e., "good access, public transportation, parking facilities, water and sewer lines, and existing clusters of usual commercial facilities". The purpose was to "create an area [with] * * * jobs, employment, and housing in close proximity that can be reached on foot, or can be served by mass transit". All recommendations for multifamily or high density housing locations in the Plan were related to proximity to jobs, or services, or transportation. The Plan did not designate any high density housing for the defendant village, as it met none of the criteria for such housing.

More importantly, the Plan designated low density development of one unit or less per acre for the village to preserve its present open space.

The village also lies in an area designated as Zone One by a water management study, which recommends one dwelling unit or less per acre to protect the groundwater from future pollutant loadings. Zone One is a primary source of drinking water in both Nassau and Suffolk Counties. Indeed, a portion of the village which includes plaintiff's parcel lies directly over what is, according to a 1982 progress report of the New York Legislative Commission on Water Resource Needs of Long Island, a critical watershed.

The Plan is also in harmony with the Regional Development Guide of the Tri-State Regional Planning Commission of Connecticut, New Jersey and New York (hereinafter the Guide) which recommends checking the expansion of urban sprawl by closely grouping the places where people live, work and shop, thus economizing on space and time, and conserving energy. The Guide states "Concentration makes good use of massive existing capital investment and enhances the effectiveness of the public services already in place". The Guide recommends that any residential development in open lands should be no denser than two acres per dwelling unit, "the smallest size that will allow the safe use of both on-lot wells and sewage disposal facilities over time". The Guide notes that "[t]he criteria for determining open-lands include a predominance of environmentally sensitive lands, the low degree of present development, extensive distance from centers of employment; the absence of streets, water and sewer lines, and other urban services and facilities; and the findings that areas designated for urban expansion are sufficient to accommodate the planned and balanced growth of jobs and housing in each part of the Region for the foreseeable future". It designates the village area as open land, recommending low density development.

Returning to the Nassau-Suffolk Plan, Arthur Kunz, a planning coordinator for the Long Island Regional Planning Board, testified that if the sites shown on the Plan were used at the recommended densities, the creation of the 62,500 units could be accomplished. Accordingly, the record shows that the village zoning ordinance serves a regional need for open space and water preservation, and that the regional need for multiunit housing is supplied by other areas in the county. Thus, the burden of proof on the second prong of the *Berenson* test has not been met (*Berenson v Town of New Castle,* 38 NY2d 102, 111, *supra*). In sum, plaintiff has failed to show that the ordinance in

question was either enacted with an exclusionary purpose, or that it ignored local or regional housing needs.

Plaintiff contends that the ordinance should be invalidated, notwithstanding the foregoing, because the Plan's projected number of needed apartment units has not been built. However, both plaintiff's and defendant's expert witnesses attributed the shortfall to economics and other factors, and not to zoning. As we have previously stated, "zoning ordinances will go no further than determining what *may* or *may not be built;* market forces will decide what will actually be built, in the absence of government subsidies * * * Thus, our concern is to determine whether, on its face, the * * * ordinance will allow the construction of sufficient housing to meet the town's share of the region's housing needs, particularly for multifamily housing *assuming that such construction be both physically and economically feasible" (Blitz v Town of New Castle,* 94 AD2d 92, 99, *supra).* Accordingly, a facially valid ordinance will not be invalidated simply because economic forces prevent construction of multifamily housing. Moreover, a requirement that those seeking to build either multifamily housing or age restricted multifamily housing must first seek a permit to do so does not destroy the presumptive validity of zoning ordinances which do not premap to provide for such housing (*Suffolk Hous. Servs. v Town of Brookhaven,* 109 AD2d 323, *supra).* Accordingly, neither the shortfall in projected housing nor the permit process for building multifamily housing is sufficient to sustain plaintiff's burden of proof for invalidating the village ordinance.

Finally, we note that although we have addressed the question asserted by plaintiff in terms of multiunit housing, and have found that plaintiff failed to show that such needs were not provided for in the region, the same concerns are present for the high density housing needs of the elderly. We note for the record that the locational criteria identified in the Plan for multiunit dwellings are the same criteria identified in the literature placed into evidence concerning the locational criteria for congregate housing for the elderly. Therefore, multiunit housing at locations recommended in the comprehensive regional plans would serve the housing needs of the elderly, as well as other age groups.

MANGANO, J. P., GIBBONS, BRACKEN and O'CONNOR, JJ., concur.

Judgment of the Supreme Court, Nassau County, entered December 7, 1983, affirmed, with costs.