[625 NYS2d 700]

CONTINENTAL BUILDING COMPANY, INC., Respondent-Appellant,
v TOWN OF NORTH SALEM et al., Appellants-Respondents.

Third Department, April 27, 1995

**APPEARANCES OF COUNSEL**

*Stephens, Buderwitz, Baroni, Reilly & Lewis,* White Plains *(Gerald D. Reilly, Roland A. Baroni, Jr.,* and *Claudia Guerrino* of counsel), for appellants-respondents.

*Shamberg Marwell Cherneff Hocherman Davis & Hollis, P. C.,* Mount Kisco *(Stuart R. Shamberg, Geraldine N. Tortorella* and *Adam L. Wekstein* of counsel), for respondent-appellant.

*Farrell, Fritz, Caemmerer, Cleary, Barnosky & Armentano, P. C.,* Uniondale *(John M. Armentano* and *James A. Bradley* of counsel), for Concerned Residents of North Salem, *amicus curiae.*

SPAIN, J.

Defendant Town of North Salem (hereinafter the Town) consists of approximately 14,000 acres (20 square miles) and is situated in the extreme northeast corner of Westchester County. Plaintiff owns approximately 63 acres of undeveloped land in the Town. In the late 1970's, plaintiff sought to develop approximately 32 acres of its property. The Town issued plaintiff a special use permit for its proposed development in 1979; thereafter plaintiff did not pursue the project.

In *208 E. 30th St. Corp. v Town of N. Salem* (Sup Ct, Westchester County, Feb. 3, 1981, Marbach, J., *affd* 89 AD2d 851), the Town's zoning ordinance was declared unconstitutional as violative of the principles set forth by the Court of Appeals in *Berenson v Town of New Castle* (38 NY2d 102 [hereinafter *Berenson*]). There, Supreme Court held that the Town's zoning ordinance was " 'illegal, invalid and unconstitutional on the grounds that * * * [it] failed to meet [the Town's] share of the regional housing needs and the needs of its own community' " *(208 E. 30th St. Corp. v Town of N. Salem, supra,* at 851). In response to Supreme Court's directive, the Town rezoned six parcels of land to permit multifamily housing as of right; plaintiff's subject property was included among the parcels rezoned. This amended zoning ordinance was passed by the Town Board in 1981 and the following year Supreme Court held that the amendments, with few exceptions, were validly enacted and directed the Town to publish same *(see, 208 E. 30th St. Corp. v Town of N. Salem,* Sup Ct, Westchester County, Jan. 7, 1982, Marbach, J., *affd* 88 AD2d 281).

In May 1985, plaintiff submitted a preliminary application to the Town Planning Board for approval to construct 184 multifamily residential housing units on its property. In early September 1985, the Town Planning Board adopted a new master plan for the Town; the new plan had been under study since August 1984. On September 18, 1985, the Town Planning Board reviewed plaintiff's site plan application and, on September 30, 1985, plaintiff submitted its application for final site plan approval. Plaintiff's application was pending for the next 18 months. In the interim, the Town Board, pursuant to the master plan, undertook the task of drafting a new zoning ordinance.

In early 1987, the Westchester County Planning Board

found the proposed revised zoning ordinance to be deficient in that it provided for "significant reductions in overall residential development potential and the reduced potential for multifamily housing opportunities". In recommending conditional disapproval, the County Planning Board found the proposal to be in conflict with the Housing and Residential Development Policy of Westchester County which, at that time, called for the creation of 50,000 additional housing units throughout the County. According to the County Planning Board, the proposed zoning ordinance would reduce the number of permitted multifamily units by 54%. Nonetheless, on March 10, 1987, the Town Board approved the new zoning ordinance which reduced the number of as-of-right multifamily housing units from 379 to 129.*

Plaintiff commenced the instant action seeking (1) a declaration that the Town's zoning ordinance is unconstitutional because it does not provide a properly balanced and well-ordered plan for the Town and because it ignores regional needs for multifamily and affordable housing, (2) damages for violation of its constitutional rights as a result of the rezoning of its property from a multifamily designation to a two-acre, single-family residential designation, and (3) counsel fees. After a lengthy nonjury trial, Supreme Court held, *inter alia,* that the Town's zoning ordinance is unconstitutional and set it aside as violative of the principles enumerated in *Berenson (supra).* Supreme Court also awarded plaintiff counsel fees in the amount of $318,977.78 plus disbursements and expenses. Defendants and plaintiff cross-appeal.

■ Initially we note that a zoning ordinance carries with it the presumption of constitutionality. To rebut this presumption, plaintiff has the burden of proving beyond a reasonable doubt that the Town's zoning ordinance is not designed to accomplish a legitimate purpose *(see, Robert E. Kurzius, Inc. v Incorporated Vil. of Upper Brookville,* 51 NY2d 338, 344, *cert denied* 450 US 1042). We hold that plaintiff has amply demonstrated that the zoning ordinance fails to comply with the judicial mandates of *Berenson* and its progeny and that Supreme Court properly set aside the zoning ordinance as unconstitutional. "[A] municipality may not legitimately exercise its zoning power to effectuate socioeconomic or racial discrimina-

---

* Prior to rezoning, the Town had six sites zoned for multifamily housing. Of these six sites, including plaintiff's subject property, five were rezoned out of multifamily housing under the new zoning ordinance.

tion" *(Suffolk Hous. Servs. v Town of Brookhaven,* 70 NY2d 122, 129). Therefore, a zoning ordinance will be invalidated "if it was enacted with an exclusionary purpose, or it ignores regional needs and has an unjustifiably exclusionary effect" *(Robert E. Kurzius, Inc. v Incorporated Vil. of Upper Brookville, supra,* at 343). In resolving claims that a zoning ordinance is exclusionary, the concern is not " 'whether the zones, in themselves, are balanced communities, but whether the town itself, as provided by its zoning ordinances, will be a balanced and integrated community' " *(Asian Ams. for Equality v Koch,* 72 NY2d 121, 133, quoting *Berenson v Town of New Castle,* 38 NY2d 102, 109, *supra).*

A municipality may not zone to exclude persons having a need for housing within its boundaries or region *(see, Berenson v Town of New Castle, supra; Matter of Golden v Planning Bd.,* 30 NY2d 359, *appeal dismissed* 409 US 1003). The *Berenson* test, as reaffirmed by the Court of Appeals in *Robert E. Kurzius, Inc. v Incorporated Vil. of Upper Brookville (supra),* has two prongs: first, a zoning ordinance must provide a properly balanced and well-ordered plan for the community, and second, it must adequately consider regional needs and requirements *(Berenson v Town of New Castle, supra,* at 110). In applying this test to the burden of proof, the Court of Appeals stated: "Generally then, a zoning ordinance enacted for a statutorily permitted purpose will be invalidated only if it is demonstrated that it actually was enacted for an improper purpose or if it was enacted without giving proper regard to local and regional housing needs and has an exclusionary effect. Once an exclusionary effect coupled with a failure to balance the local desires with housing needs has been proved, then the burden of otherwise justifying the ordinance shifts to the defendant [citation omitted]" *(Robert E. Kurzius, Inc. v Incorporated Vil. of Upper Brookville, supra,* at 345).

In establishing the first prong of the *Berenson* test, plaintiff presented compelling evidence that the net result of the zoning ordinance is a scheme of large-lot, single-family residential development. The evidence reveals that the ultimate consequence of the zoning ordinance is that only upper-income families can reasonably be expected to purchase residences and live in the Town, to the exclusion of all others.

The zoning ordinance reduces nonresidential zoning by 79%. However, while 98% of the total area of the Town is designated for residential development on minimum-sized lots rang-

ing from one-half acre to four acres, only 0.33% of this land is designated for multifamily development as of right, amounting to a total of approximately 43 acres. It is not insignificant that this number is profoundly less than that which was judicially mandated, and approved, in *208 E. 30th St. Corp. v Town of N. Salem* (Sup Ct, Westchester County, Feb. 3, 1981, Marbach, J., *supra;* Sup Ct, Westchester County, Sept. 3, 1981, Marbach, J.). Moreover, the evidence reveals that the zoning ordinance not only fails to provide for affordable multifamily housing, but works in subtle ways to discourage such housing under the guise of protecting the environment. The zoning ordinance includes an automatic deduction system which increases the acreage required to build in residential districts, thus reducing the density of development beyond a point where affordable housing is feasible. Even though the location of a proposed development/residence in a sensitive environmental area would result in an automatic deduction (i.e., increased acreage requirements) under the zoning ordinance, there are no provisions in the zoning ordinance which either preserve agriculture or environmentally sensitive areas or prevent lands from being developed. The ultimate result of the new zoning ordinance is that there is a socioeconomic separation of classes in the Town.

The record reveals that during the period from 1986 to the time of the trial, the median household income in both Westchester County and the Town was less than one half of that necessary to carry a mortgage on the median-priced single-family house in both localities. It is also noteworthy that, as of the time of the trial, there were only eight multifamily structures in the Town and none was constructed after the judgment in *208 E. 30th St. Corp. v Town of N. Salem* (Sup Ct, Westchester County, Feb. 3, 1981, Marbach, J., *supra).* Additionally, none of these eight structures has five or more units.

The evidentiary and factual considerations surrounding the second prong of *Berenson (supra)* support Supreme Court's finding that the zoning ordinance fails to adequately consider regional needs and requirements. At the trial, it was clearly established that there is a regional need for affordable housing and that multifamily housing, given the nature of its construction and function as a whole, is one of the most affordable types of housing. In this regard, while *208 E. 30th St. Corp. v Town of N. Salem* (Sup Ct, Westchester County, Feb. 3, 1981, Marbach, J., *supra)* cannot be res judicata, the findings of fact and mandates of that court are of critical importance. There,

Supreme Court specifically found that regional housing needs existed and, more important, that the Town has failed to meet its share of regional housing needs and the needs of its community. Significantly, Supreme Court specifically determined that a minimum of 200 units is necessary in the Town *(see, 208 E. 30th St. Corp. v Town of N. Salem,* Sup Ct, Westchester County, Sept. 3, 1981, Marbach, J., *supra).* Defendants offered no proof to demonstrate that these needs either diminished or were met between 1981 and March 1987.

Having established a regional housing need, we address the issue of whether the Town's zoning ordinance makes adequate provisions for meeting such needs. In this regard, it must be determined whether the zoning ordinance "on its face * * * will allow the construction of sufficient housing to meet the town's share of the region's housing needs, particularly for multifamily housing, *assuming that such construction be both physically and economically feasible" (Blitz v Town of New· Castle,* 94 AD2d 92, 99 [emphasis in original]). In the instant case, the Town's zoning ordinance on its face does not make adequate provisions for the housing needs and should not be upheld under the *Berenson* standard. The reduction from the 379 multifamily housing units permitted as of right under the prior ordinance to 129 now permitted has not been explained. The Town argues, however, that many provisions exist in the zoning ordinance to otherwise meet these housing needs, such as density bonuses, accessory apartments, multifamily housing units for the elderly and handicapped and the opportunity to develop multifamily housing in two mapped planned development districts. As noted by Supreme Court, however, these factors are intrinsically narrow in scope and do very little to genuinely address the established need for multifamily housing. Plaintiff has demonstrated the exclusionary effect, coupled with the failure to balance local desires with housing needs, while defendants have clearly failed to demonstrate that the zoning ordinance provides a sufficient array of multifamily housing opportunities to pass scrutiny in this case *(see, Robert E. Kurzius, Inc. v Incorporated Vil. of Upper Brookville,* 51 NY2d 338, 345, *supra).*

Finally, defendants' contention that *Berenson (supra)* and its progeny eschew any requirement of affordability is simply wrong. The Court of Appeals held that exclusionary zoning "is a form of racial or *socioeconomic* discrimination which we have repeatedly condemned" *(Asian Ams. for Equality v Koch,* 72 NY2d 121, 133, *supra* [emphasis supplied]). Furthermore,

exclusionary zoning has been defined as "land use control regulations which singly or in concert tend to exclude persons of low or moderate income from the zoning municipality" (1 Anderson, New York Zoning Law and Practice § 8:02, at 360 [3d ed]). Thus, the general rule that a municipality may not, by its zoning ordinance, create obstacles to the production of a full array of housing includes housing such as low and moderate income housing or, in other words, affordable housing.

■ As to counsel fees, defendants assert that Supreme Court committed error in awarding counsel fees to plaintiff. Conversely, plaintiff contends that the award of counsel fees was proper but that Supreme Court abused its discretion in reducing its fee by more than $107,000. Plaintiff is clearly a "prevailing party" in this case under 42 USC § 1988 such that an award of counsel fees may be proper. It is well settled that 42 USC § 1988 authorizes an award of counsel fees in State court actions provided that a party seeks relief on both State and Federal grounds and the Federal claims are, among other things, not wholly insubstantial or patently frivolous *(see, Matter of Johnson v Blum,* 58 NY2d 454, 458, n 2; *Matter of Oliver v County of Broome,* 113 AD2d 239, 243, *appeal dismissed* 67 NY2d 1027, *lv denied* 67 NY2d 607). Plaintiff's claims in this case all derive from a common nucleus of operative facts and those purely Federal claims were not wholly insubstantial or patently frivolous *(see, Hagans v Lavine,* 415 US 528, 537-538; *Mine Workers v Gibbs,* 383 US 715, 725; *Matter of Johnson v Blum, supra).* Furthermore, defendants have failed to meet their burden of establishing any circumstances which militate against awarding a fee to plaintiff *(see, Matter of Johnson v Blum, supra; Matter of Campain v Marlboro Cent. School Dist. Bd. of Educ.,* 138 AD2d 914).

As to the amount awarded, we hold that Supreme Court erred in reducing plaintiff's counsel fees. Supreme Court specifically found that the amount of time spent by plaintiff on these proceedings was reasonable as well as sufficiently and appropriately documented and that the rate charged was also reasonable. Moreover, in determining whether to reduce counsel fees, Supreme Court analyzed the factors outlined in *Matter of Rahmey v Blum* (95 AD2d 294) and specifically found that none supports a reduction in the fees requested. Given these specific findings, there is no justification for a reduction in the fees. To the extent that Supreme Court stated reasons for reducing the award, i.e., erring on the side of conservatism and avoiding contribution toward the overpric-

ing of litigation, these reasons do not override Supreme Court's own findings as to the reasonableness of the requested counsel fees.

CARDONA, P. J., MERCURE, WHITE and PETERS, JJ., concur.

Ordered that the judgment is modified, on the law, with costs to plaintiff, by reversing so much as partially denied plaintiff's application for $426,782.18 in counsel fees; plaintiff's application for counsel fees granted in its entirety; and, as so modified, affirmed.