Hon. Richard Warrender Formal Opinion State Advocate No. 97-F6 Office of Advocate for Persons With Disabilities One Empire State Plaza, Suite 1001 Albany, N Y 12223-1150
Dear Mr. Warrender:
Your counsel asked for an opinion regarding the authority of local governments to regulate the placement and operation of human services agencies such as soup kitchens, substance abuse treatment facilities, counseling centers, group homes and others. Specifically, you inquire about the extent of local government authority to use zoning and land use review powers to control the location of human services organizations and to regulate the operations and services offered by such organizations. The validity of any local zoning measure as it is applied to human service agencies will depend on the particular facts and circumstances of each individual case. The following discussion sets forth general principles and identifies factors to be considered in evaluating local measures.
Article IX of the New York State Constitution grants municipalities broad home rule powers. In accord with this provision, Municipal Home Rule Law § 10(1)(ii)(a)(11) gives counties, cities, towns and villages the power to enact local laws for the protection and enhancement of their "physical and visual environment". Subsection (1)(ii)(a)(12) grants municipalities the power to enact local laws regarding the "government, protection, order, conduct, safety, health and well-being of persons or property therein". In addition to these extremely broad grants of police power to local governments, the Legislature expressly has authorized them to enact zoning laws. County Law § 220; General City Law § 20; Town Law § 261; Village Law § 7-700; Statute of Local Governments § 10(6); Municipal Home Rule Law § 10(1)(ii)(a)(14).
The broad authority of municipalities to enact zoning measures is not unlimited. A local government may not adopt laws that are inconsistent with the Constitution or with any general law of the State. N Y Const, Art IX, § 2(c); Municipal Home Rule Law § 10(1)(i), (ii). A local government also may not adopt local laws when State law has preempted local regulation of a given subject. The State's intent to preempt local legislation may be expressed in a statute or other declaration of State policy. Where there is no expression of such intent, it may be inferred from enactment of a comprehensive and detailed regulatory scheme. NewYork State Club Assoc. v. City of New York, 69 N.Y.2d 211 (1987), affd,487 U.S. 1 (1988); Consolidated Edison Co. v. Town of Red Hook,60 N.Y.2d 99 (1983).
The Legislature has withdrawn or limited the zoning powers of local governments in some areas. For example, the Legislature has preempted local regulation of the location of facilities defined as "community residential facilities" for the mentally disabled by enacting Mental Hygiene Law § 41.34. That provision empowers the Commissioner of the State agency or department responsible for licensing such facilities to approve proposed sites. It also permits a municipality to approve the proposed site, to suggest other suitable sites, or to object to the establishment of a community residential facility at the proposed site only on the ground that it would create such a concentration of specified residential care facilities that the nature and character of the area would be substantially altered. The Commissioner must hold a hearing to resolve any dispute. See, Matter of Jennings v. NYS Office ofMental Health, ___ N.Y.2d ___ (6/12/97). Thus, local zoning regulations may not be used to exclude such facilities from a particular municipality.
Similarly, Social Services Law § 390(12)(a) and (b) provide that municipalities may not prohibit use of specified dwellings for group family day care if the State Department of Social Services has issued a permit for such use. Under those provisions, municipalities also may not impose standards for sanitation, health, fire safety or building construction on a dwelling used to provide family day care or group family day care that are different than those that would apply if child care were not provided on the premises. See also, People v. Town ofClarkstown, 160 A.D.2d 17 (2d Dept 1990) (town's zoning ordinance provisions regulating family day care homes preempted by Social Services Law).
Not all State regulation of a particular subject preempts local regulation in the same area. In some instances, State and local regulations may coexist. In Incorporated Village of Nyack v. DaytopVillage, Inc., 78 N.Y.2d 500 (1991), for example, the Court held that State oversight of the location and operation of substance abuse treatment facilities pursuant to the Mental Hygiene Law does not preempt the application of local zoning laws to such facilities. Daytop involved a proposal to site a residential substance abuse treatment facility in an area of the village zoned for commercial use. The village's code expressly prohibited any residential uses in the zone. The responsible State agency had conducted a detailed review of the proposal, including physical plant requirements, and had approved operation of the facility at the site in question. The village objected. The Appellate Division held that the State had preempted the field of substance abuse treatment regulation and that the agency need not comply with local zoning laws. The Court of Appeals reversed, concluding that the State law and local regulation could be harmonized. 78 N.Y.2d at 504.
The Court acknowledged that the State had enacted a broad and detailed program to combat substance abuse and to regulate its treatment. It found, however, that this did not mean that all local laws with an impact, "however tangential," on the siting of treatment facilities were preempted. 78 N.Y.2d at 506. The Court recognized that the State's interest in controlling substance abuse and the village's interest in regulating its present shape and future growth were both significant. It noted that the State had not expressly withdrawn the zoning authority of local governments in this area, as it had with respect to the siting of community residential facilities for the mentally disabled.78 N.Y.2d at 506-507.
The Court next reasoned that preemption could not be implied. It examined the governing statutes and concluded that they contemplated a joint effort by State and local officials to address the problem of substance abuse. 78 N.Y.2d at 508. Accordingly, the Court concluded that two separate levels of regulation could coexist. It noted that no showing had been made that the village had tailored its zoning law to block the placement of treatment facilities within its borders and that the village was well within its authority in creating commercial zones.78 N.Y.2d at 508.
These precedents necessitate a careful analysis of any State regulation of a particular human services agency's function to determine whether local zoning measures have been preempted or whether they may be harmonized with State enactments.
In addition to examining the preemptive effect of State law on local zoning, courts have recognized limits on a municipality's use of its zoning powers. There is no clear-cut formula for separating legitimate and improper uses of the zoning power; surrounding circumstances and conditions must be examined. Maldini v. Ambro, 36 N.Y.2d 481, certdenied, 423 U.S. 993 (1975). While a municipality may use its zoning power to maintain the nature and character of residential neighborhoods, it may not apply completely arbitrary restrictions. In upholding a local ordinance that established a five-acre minimum lot requirement, for example, the Court of Appeals stated:
 In general, the enactment of a zoning ordinance is a valid exercise of the police power if its restrictions are not arbitrary and they bear a substantial relation to the health, welfare and safety of the community. Robert E. Kurzius, Inc. v. Incorporated Village of Upper Brookville, 51 N.Y.2d 338, 343 (1980), cert denied, 450 U.S. 1042 (1981).
The Court also stated that a zoning ordinance assertedly enacted for a permitted purpose will be invalidated if it can be demonstrated that it was enacted for an improper or exclusionary purpose, or if it ignores regional needs and has an unjustifiably exclusionary effect.51 N.Y.2d at 345. To be upheld, an ordinance must have been enacted in furtherance of a legitimate governmental purpose and there must be a reasonable relation between the end sought to be achieved by the regulation and the means used to achieve that end. McMinn v. Town of Oyster Bay, 66 N.Y.2d 544
(1985).
In City of Cleburne, Texas v. Cleburne Living Center, Inc., 473 U.S. 432
(1985), for example, the Court determined that a local ordinance, as applied to a group home for the mentally retarded, violated the equal protection clause. The zoning ordinance at issue provided that within an "R-3 Apartment House District" a number of uses were permitted. These included boarding houses, fraternity houses, private clubs, nursing homes and convalescent homes, but excluded hospitals or homes for the insane, feeble-minded, alcoholics or drug addicts. A special use permit was required for such uses. When the group home, which was intended to house about 13 mentally retarded individuals, applied for a special use permit the city held a public hearing and then denied the permit.
The Court addressed the ordinance as applied in the particular case before it and did not examine its facial validity. The Court found an equal protection violation, stating:
 [T]he City Council's insistence on the permit rested on several factors. First, the Council was concerned with the negative attitude of the majority of property owners located within 200 feet of the Featherston facility, as well as with the fears of elderly residents of the neighborhood. But mere negative attitudes, or fear, unsubstantiated by factors which are properly cognizable in a zoning proceeding, are not permissible bases for treating a home for the mentally retarded differently from apartment houses, multiple dwellings, and the like. It is plain that the electorate as a whole, whether by referendum or otherwise, could not order city action violative of the Equal Protection Clause . . . and the city may not avoid the strictures of that Clause by deferring to the wishes or objections of some fraction of the body politic. "Private biases may be outside the reach of the law, but the law cannot, directly or indirectly, give them effect." . . . (Citations omitted.)
473 U.S. at 448.
The Court noted that the city also had taken a number of other factors into account. These included the location of the home across the street from a junior high school and within a flood plain, doubts about the legal responsibility for actions the mentally retarded residents might take, the size of the home and the number of people who would occupy it, traffic congestion, the serenity of the neighborhood and others. The Court concluded that there was no rational basis for treating the mentally retarded differently from other groups who were allowed to reside in the R-3 zone. The Court stated:
 The short of it is that requiring the permit in this case appears to us to rest on an irrational prejudice against the mentally retarded, including those who would occupy the . . . facility and who would live under the closely supervised and highly regulated conditions expressly provided for by state and federal law. 473 U.S. at 450.
In McMinn, supra, the Court held that a local zoning ordinance violated the due process clause of the State Constitution. It restricted certain areas to single family homes and defined "family" as any number of persons related by blood, marriage or adoption or two unrelated persons age 62 or older. The Court of Appeals found there was no reasonable relation between the zoning purposes, which included reduction of noise, traffic and parking problems, and the limitation on unrelated persons who could constitute a "family". See also, Group House of Port Washington,Inc. v. Board of Zoning and Appeals, 45 N.Y.2d 266 (1978) (zoning ordinance allowing "one-family" residence may not be used to exclude small group home used for foster care of children; excluding functional equivalent of family is arbitrary); City of White Plains v. Ferraioli,34 N.Y.2d 300 (1974) (small group home consisting of couple, their children and foster children could not be excluded from one-family residential district).
The impact of Federal law upon local zoning ordinances also must be considered. For example, the Fair Housing Amendments Act of 1988 (FHAA), Public Law No. 100-130, 102 Stat. 1619 (1988) extends to individuals with handicaps and families with children the same protections that the Fair Housing Act, Public Law No. 90-284, 82 Stat. 81 (codified as amended at42 U.S.C. § 3601-3606 [Supp 1994]), has provided for the past twenty years in prohibiting housing discrimination based on race, color, religion, national origin and sex. Numerous cases challenging State and local efforts to regulate the siting of human services agencies have been brought under this statute. The law in this area is still evolving. See,e.g., Bangerter v. Orem City Corp., 46 F.3d 1491, 1498 (10th Cir 1995) (plaintiff established a prima facie case of violation of FHAA by conditions placed by municipality on zoning approval for group home for mentally retarded and governing state statute, both of which expressly applied only to group homes for handicapped); Larkin v. State ofMichigan, 89 F.3d 285 (6th Cir 1996) (Michigan statute restricting location of adult foster care homes and requiring neighbor notification violated and was preempted by FHAA); Huntington Branch, NAACP v. Town ofHuntington, 844 F.2d 926 (2d Cir), affd, 488 U.S. 15 (1988) (town violated FHA when it refused to amend an ordinance that restricted multifamily housing projects to predominantly minority area so that construction could take place in another area).
Other Federal laws also may be applicable to local zoning measures. See,e.g., Innovative Health Systems, Inc. v. City of White Plains,931 F. Supp. 222 (S.D.N.Y. 1996) (appeal pending) (holding zoning is an "activity" of a public entity to which the Americans With Disabilities Act [42 U.S.C. § 12101, et seq.] applies, and that plaintiffs stated claim under the Rehabilitation Act [29 U.S. § 794] by alleging that city received Federal aid and that city's instrumentalities discriminated against them in refusing to permit a substance abuse treatment facility to relocate).
In sum, a number of factors must be considered in evaluating a municipality's authority to use its zoning powers to control the location of human services agencies. The Legislature has withdrawn localities' authority to use zoning to regulate some defined types of human services. In other instances, State and local regulation may coexist. Courts have held local zoning laws valid if their restrictions are not arbitrary and bear a substantial relation to the health, welfare and safety of the community. Federal law, including the Fair Housing Amendments Act of 1988, the ADA and the Rehabilitation Act also must be considered in evaluating a local zoning law.
Very truly yours,
DENNIS C. VACCO
Attorney General